**Jake BUTLER, Plaintiff–Appellant,**

**v.**

**Luis CASTRO, Det. # 1607; Arthur J. Christiani, # 2942; Jack F. Moy, # 557; All of the Bronx County District Attorney's Squad; The Bronx County District Attorney's Office; Diallo I. Bennet, Det. # 65; of the 44th Precinct; The 44th Precinct, of NYC P.D.; The Property Clerk, of NYCPD, of the NYC Police Dept., New York City P.D., of NYC, and NYC, Jointly, Severally, and Individually, Respectively, Defendants–Appellees.**

**No. 495, Docket 89–2067.**

United States Court of Appeals, Second Circuit.

Argued Dec. 5, 1989.

Decided Feb. 20, 1990.

Daniel J. Kramer (Schulte Roth & Zabel, New York City, of counsel), for plaintiff-appellant.

Patrick L. Taylor (Elizabeth S. Natrella, Peter L. Zimroth, Corp. Counsel of the City of New York, of counsel), New York City, for defendants-appellees.

Before LUMBARD, NEWMAN and WINTER, Circuit Judges.

WINTER, Circuit Judge:

This appeal raises questions concerning the procedures followed by the City of New York in disposing of items seized during an arrest. Plaintiff Jake Butler's complaint alleges that defendants, in violation of 42 U.S.C. § 1983, sold his automobile and disposed of certain other items without notifying him of the procedures for reclaiming seized property. The complaint was dismissed by the district court on the ground that state law provides an adequate post-deprivation remedy. It is true that the actual procedures followed by the City with regard to the disposition of seized items are constitutionally valid. However, these procedures are not in the municipal code, and the pertinent municipal ordinance misleads affected persons as to what those procedures are and how they are to be invoked. We therefore reverse.

## BACKGROUND

■ Butler's *pro se* complaint was dismissed for failure to state a claim, and we therefore accept the allegations in the complaint and its accompanying materials as true. *See Hughes v. Rowe*, 449 U.S. 5, 9–10, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980) (per curiam); *Cameron v. Fogarty*, 705 F.2d 676, 678 (2d Cir.1983).

Butler was arrested in New York City on January 28, 1985, and is currently incarcerated after a conviction on narcotics charges brought pursuant to that arrest. At the time of his arrest Butler was in or near his automobile, a 1976 Chevrolet Nova. Police officers seized the car, as well as several personal items in his possession, including a briefcase, a wallet with personal photographs, a key chain, various office supplies, and eight design drawings of buildings and vessels alleged to be of considerable value.

After his conviction, Butler made several attempts to reclaim his property. On June 6, 1986, he mailed a "Complaint To Recover Property" to the state court in which he had been convicted, naming the Property Clerk of the City of New York as a defendant, identifying the items taken, and demanding that they be returned to him or surrendered to his designee. The court

advised him to contact the Legal Aid Society or Prisoners' Legal Services of New York for assistance. Butler wrote to those agencies, but they informed him that they did not have the resources to help him.

Butler also inquired of the Bronx District Attorney's Office and the New York City Police Department regarding the whereabouts of his property. Early in his attempts to recover his property Butler had, by a "power of attorney," authorized an acquaintance, Benedict Singh, to help him in his inquiries. Although Singh apparently was able to recover Butler's wallet and certain other papers, Butler's and Singh's efforts were otherwise unavailing. Butler eventually did ascertain, however, that his automobile was sold by the Police Department on August 24, 1986.

Much of the dispute in the instant matter concerns whether Butler received a voucher for the property seized at the time of his arrest. Although arrestees are supposed to be given such a voucher as a routine matter, Butler claims that he did not receive a voucher. This allegation is seemingly contradicted by the recitation of a voucher number in his "power of attorney" authorizing Singh to proceed on his behalf, a copy of which was appended to his complaint. Butler's counsel explained at oral argument, however, that, long after the arrest, through the efforts of his trial attorney, Butler obtained a photocopy of only the front side of a voucher describing his automobile, a voucher he insists was never given to him. Given that the complaint is *pro se* and that this is an appeal from a judgment of dismissal, we accept that explanation as an allegation. *See Cameron*, 705 F.2d at 678. That he received only a copy of the front side of a voucher is the principal basis of Butler's claim because the only notice available to arrestees concerning recovery procedures is printed on the reverse side of the voucher form. The receipt or non-receipt of both sides of a voucher is thus crucial to the issue of notice to Butler of the procedures to be followed in recovering his property.

On July 23, 1987, Butler's *pro se* complaint was filed. That day, Chief Judge

Brieant dismissed the complaint without prejudice before defendants had answered because, under *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984), and *Parratt v. Taylor*, 451 U.S. 527, 542–44, 101 S.Ct. 1908, 1916–17, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986), the existence of an adequate post-deprivation remedy in the state courts, specifically an action under Section 9 of the New York Court of Claims Act, precluded an action under Section 1983. On appeal, we remanded the case without reaching the merits, directing that the City defendants respond to the complaint. *See Butler v. Castro*, No. 87–2349 (2d Cir. Nov. 12, 1987).

Butler's case was then reassigned to Judge Sprizzo. After the City had filed an answer and moved to dismiss the complaint under Fed.R.Civ.P. 12(c), Judge Sprizzo dismissed with prejudice, on essentially the same grounds as Chief Judge Brieant, except that he stated in his oral opinion that the general tort remedy of replevin was also an adequate post-deprivation remedy under New York law. Butler appealed *pro se*, and we granted his request for the assignment of counsel.

## DISCUSSION

■ Butler argues that under *Parratt* an adequate post-deprivation remedy is a defense to a Section 1983 due process claim only where the deprivation is random and unauthorized. We agree. In *Sullivan v. Town of Salem*, 805 F.2d 81 (2d Cir.1986), we held that the existence of independent state relief does not defeat a Section 1983 claim where the deprivation complained of results from the operation of established state procedures. In *Sullivan* we stated that *"Parratt* and its progeny, which apply only to random, unauthorized conduct, are simply inapposite" to suits seeking redress of harms inflicted "pursuant to town policy." *Id.* at 86; *see also Anderson v. City of New York*, 611 F.Supp. 481, 491–92 (S.D. N.Y.1985) (municipal defendants' failure to implement and monitor procedures governing the return of photographs and fingerprints was a "systemic failure" supporting Section 1983 action regardless of availability of state law remedy); *Allman v. Coughlin*, 577 F.Supp. 1440, 1447 (S.D.N.Y.1984) (claim that plaintiffs' loss resulted from inadequate training and supervision of correctional personnel stated basis for Section 1983 relief despite possibility of state law relief).

Butler's counsel relies upon two theories to distinguish *Parratt*. First, he argues that his failure to receive a voucher for his property was only one incident in a more widespread, systematic failure to provide vouchers to arrested persons. Second, he asserts that the City's Administrative Code, which does not disclose the actual procedures to be followed by claimants of seized property, constitutes an established procedure of misleading those who rely on the Code.

■ The first of these theories certainly fails. Even construing Butler's *pro se* complaint liberally, *see, e.g., Elliott v. Bronson*, 872 F.2d 20, 21 (2d Cir.1989) (per curiam), nothing in it suggests that his experience was other than unique. A conclusory allegation of a pattern of withholding vouchers, without evidentiary support or allegations of particularized incidents, does not state a valid claim.

■ Butler's second argument has merit. The procedures described on the reverse side of the voucher and the requirement that they be printed there derive from an order by Judge Lasker issued after our decision in *McClendon v. Rosetti*, 460 F.2d 111 (2d Cir.1972). We held there that the New York City Administrative Code § 435–4.0, which placed the burden of initiating recovery proceedings upon the claimant, was unconstitutional as applied to persons with claims upon non-contraband items not needed as evidence. *See id.* at 116. We also noted that the ordinance lacked "any meaningful requirement of notice." *Id.* at 115.

In an unpublished order entered on July 15, 1974, Judge Lasker outlined the procedures to govern the Police Property Clerk's

custody of seized property.[1]  The Adminis- trative Code has not been amended to in-

1. Judge Lasker's order reads in pertinent part:

It is hereby ORDERED as follows:

1. The class represented by plaintiffs herein is established as all persons from whose possession money or property, other than contraband, is taken or obtained, though such money or property is not related to any criminal proceeding, or, if it was so related, such criminal proceedings were terminated, or if the money or property was needed as evidence in a criminal proceeding, it is no longer needed for that purpose, which property or money is or was, on or subsequent to September 3, 1970, the date of the filing of the complaint herein, in or subject to the possession, custody or control of the Police Property Clerk.

2. The Police Department is ordered and directed to continue the following procedures governing the taking of non-contraband property or money from persons at the time of their arrest ...

(a) When an arrested person is brought to the stationhouse an inventory of the property and money taken from his person or from his possession shall be made. The police then shall issue a voucher, which will be given personally to the person arrested, as a receipt for the items taken from him, except for such property which is defined as contraband by law. The voucher will contain the name of the person from whom the property or money was taken and a complete itemized list of all property and money taken and a brief description thereof.

* * * * * *

(d) Attached to the voucher or on the back of the voucher in bold letters, notice must be given in English and Spanish that the person from whom the property or money was taken must retain this voucher, and that in order to obtain the return of the property or money he will be required to submit this voucher, proper identification and, in addition, a district attorney's release that the said property or money is not needed as evidence, to the office of the Police Property Clerk located at a central location in each borough.

(e) The notice shall further state that in the event a claimant does not demand the property or money within 90 days after termination of criminal proceedings, or, if a district attorney's release is obtained prior to the termination of criminal proceedings, within 90 days after the issuance of such release, whichever is sooner, said property or money can be disposed of by the Police Property Clerk pursuant to the provisions of law. In addition, the notice shall state that if the claimant is incarcerated or imprisoned, he must make a claim to the property within 90 days after termination of criminal proceedings but he shall have an additional 90 days to obtain a district attorney's release.

3. The Police Property Clerk shall return all non-contraband property or money, which is or shall hereafter come into his possession or custody, upon timely demand, to a member of the class herein who submits to the office of the Police Property Clerk a written district attorney's release covering such property or money and the voucher issued at the time of arrest, except as provided hereafter in paragraphs 8 and 10.

4. A demand for the return of property or money shall be timely if made within 90 days after the issuance of a district attorney's release or within 90 days after termination of criminal proceedings, whichever is sooner. A demand may be made by the claimant or by a representative authorized in writing to claim the property or money on behalf of the claimant. If the demand is made either by the claimant personally, or by such representative, the Property Clerk may require him to identify himself and state his present address. The Property Clerk may also require that the claimant or his representative sign a receipt for the property or money returned to him, and he may require such person to submit the voucher for the property or money described in paragraph 2 hereof.

5. If the claimant is imprisoned or incarcerated, a demand shall be timely if made by the claimant in writing to the Police Property Clerk, or by his duly authorized representative, within 90 days after termination of criminal proceedings. Within 90 days after acknowledgment by the Police Property Clerk of such a demand by an imprisoned or incarcerated person, there must be obtained a district attorney's release covering such property or money.

6. Failure to produce the voucher shall not preclude a lawful claim being made for the property or money, but the Police Property Clerk may require the claimant to explain the loss or absence of the voucher and to produce adequate identification.

7. If proper demand is not made within the time specified in paragraphs 4 and 5, the Property Clerk shall retain all noncontraband property or money taken from an arrested person for no less than 90 days subsequent to the termination of all criminal proceedings against such person. After such period of time, the property or money may be disposed of pursuant to law.

* * * * * *

8. Where there is reasonable cause to believe that the property or money was unlawfully obtained or was stolen or was the proceeds of crime or instrumentality of crime, the Police Property Clerk may refuse to return the property or money and may cause to be initiated, within 10 days of a demand for the return of property or money coupled with presentation of the district attorney's release, a lawful forfeiture or other similar judicial proceeding ... If such proceeding is not com-

corporate these procedures, however, and although renumbered as NYC Admin.Code § 14–140, has not been materially changed since *McClendon*.[2]

Under Judge Lasker's order, a voucher must be given to an arrestee for non-contraband property seized. The voucher must also give notice of the procedures to be followed to recover such property. A claimant must make a demand upon the property clerk for his property or money within 90 days of the earlier of (i) the termination of the criminal proceeding, or (ii) the issuance by the District Attorney of a release indicating that the property or money is not needed as evidence. The City must, within ten days of a timely demand, either return the item or items in question or initiate judicial action to authorize their continued detention. In the absence of a

menced within 10 days of a demand for the return of property or money coupled with presentation of the district attorney's release, the Police Property Clerk shall give written notice to the claimant or other authorized representative at his or her last known address that the property or money will be returned forthwith to such person. Property or money which remains unclaimed for a period of 90 days after the date of the notice provided in this paragraph may be disposed of by the Police Property Clerk.

    \*    \*    \*    \*    \*    \*

2. The Administrative Code reads in pertinent part:

§ 14–140 *Property clerk.*

a. Appointment, duties and security.

1. The commissioner shall employ a property clerk who shall take charge of all property and money hereinafter described.

    \*    \*    \*    \*    \*    \*

b. Custody of property and money. All property or money taken from the person or possession of a prisoner, all property or money suspected of having been unlawfully obtained or stolen or embezzled or of being the proceeds of crime or derived through crime or derived through the conversion of unlawfully acquired property or money or derived through the use or sale of property prohibited by law from being held, used or sold, all property or money suspected of having been used as a means of committing crime or employed in aid or furtherance of crime or held, used or sold in violation of law, ... all property or money taken by the police as evidence in a criminal investigation or proceeding ... that shall come into the custody of any member of the police force or criminal court ... shall be given, as soon as practicable, into the custody of and kept by the property clerk except that vehicles suspected of being stolen or abandoned and evidence vehicles as defined in [this code] may be taken into custody....

    \*    \*    \*    \*    \*    \*

e. Disposition of property and money.

1. ... All moneys or property other than abandoned vehicles subject to the provisions of ... section twelve hundred twenty-four [of the vehicle and traffic law] that shall remain in the custody of the property clerk for a period of three months without a lawful claimant entitled thereto shall, in the case of moneys, be paid into the fund described in subchapter one of chapter two of title thirteen of the code, and in the case of property other than such abandoned vehicles, be sold at public auction after having been advertised in "the City Record" for a period of ten days and the proceeds of such sale shall be paid into such fund. In the alternative, any such property may be used or converted to use for the purpose of any city, state or federal agency, or for charitable purposes, upon consultation with the human resources administration and other appropriate city agencies, and the commissioner shall report annually to the city council on the distribution of such property.... Where moneys or property have been unlawfully obtained or stolen or embezzled or are the proceeds of crime or derived through crime or derived through the conversion of unlawfully acquired property or money ... a person who so obtained, received or derived any such moneys or property ... shall not be deemed to be the lawful claimant entitled to any such moneys or property....

    \*    \*    \*    \*    \*    \*

f. Lawful property right to be established. In any action or proceeding against the property clerk for or on account of any property or money in his or her custody, a claimant from whose possession such property or money was taken or obtained, or any other claimant, shall establish that he or she has a lawful title or property right in such property or money and lawfully obtained possession thereof and that such property or money was held and used in a lawful manner. In any such action or proceeding, a claimant who derives his or her title or right by assignment, transfer or otherwise from or through the person from whose possession such property or money was taken or obtained, shall further establish that such person had a lawful title or property right in such property or money and lawfully obtained possession thereof and that such property or money was held and used in a lawful manner.

g. No action for property or money held as evidence. No action or proceeding may be brought against the property clerk for or on account of any property or money held as evidence in any criminal investigation or proceeding until the termination thereof.

timely demand, the property clerk may dispose of the property.

An arrestee who fails to receive a voucher, however, would not know of the need to make a demand on the property clerk and the burden on the City either to return the property or to bring a judicial action. To the contrary, because the Administrative Code has not been amended to reflect the *McClendon* procedures, a claimant is led to believe that no such procedures exist. Section 14–140 does state that "moneys or property ... that shall remain in the custody of the property clerk for a period of three months without a lawful claimant entitled thereto" shall be disposed of by the clerk. NYC Admin.Code § 14–140(e)(1). However, the Code is silent as to the procedures a claimant should follow, and it continues to place the burden on the claimant to establish that he has lawful title. *See* Section 14–140(f). Defendants concede that it is Judge Lasker's 1974 order in *McClendon,* and not Section 14–140 of the Code, that governs their possession and disposition of seized materials. In effect, therefore, apart from the voucher, the only public notice of procedures to recover property is entirely misleading.

We are not the first court to note that the Code fails to reflect in any meaningful respect the actual practices of the Police Department and its property clerk or the existing procedures for reclaiming such property. *See Property Clerk v. Seroda,* 131 A.D.2d 289, 295, 521 N.Y.S.2d 233, 238 (App.Div.1987) ("In passing, we note the absence of any ameliorative legislation with respect to Administrative Code § 14–140 in the more than thirteen years since the entry of the McClendon order. This would seem to be a matter worthy of legislative attention.").

We believe that the failure to eliminate the obsolete provisions of the Code and to publicize the actual procedures to be followed deprived Butler of an adequate state remedy. The primary remedy for an arrestee's reclaiming of seized property is the procedure established by Judge Lasker. A failure to follow that procedure will inevitably result in a sale or other disposition of the property. Moreover, the sheer number of persons arrested every year in New York City makes it inevitable that at least some will, for one reason or another, not receive a voucher. As to these claimants, the failure to amend Section 14–140 is necessarily and foreseeably misleading as to the primary procedure to recover property.

Butler's allegations illustrate that the use of the voucher as the sole means of notifying arrestees of the procedures to reclaim property and the failure to eliminate the obsolete provisions of the Code will significantly impede a claimant who has not received a voucher. He made early, earnest and documented attempts to recover his property. These attempts were unsuccessful because they did not follow the procedures established in Judge Lasker's order. Section 14–140, although it does include some (partially inaccurate) time limitations for making a claim, completely fails to suggest the next step to someone who desires to make such a claim. It is entirely understandable that Butler would contact the state court, the District Attorney and the Police Department, personally or through Singh, but without success.

*Parratt* deals with the inevitable losses of property that will occur in any system in which large numbers of persons are arrested or incarcerated. Nothing in that decision indicates that due process is satisfied where a state notifies potential claimants of procedures to reclaim seized property by a method that will fail in some cases while giving public notice of a procedure that no longer exists. Requiring the City to maintain an accurate Administrative Code with regard to such matters does not impose an unreasonable burden.

Although the parties differ as to whether the remedy of replevin would now be time-barred, we do not reach that issue. The fact that the Code misleads claimants as to the primary remedy makes the availability of replevin, or any other secondary New York remedy, irrelevant. Indeed, where no steps are taken to invoke the primary remedy, the sale or other disposition of the property becomes inevitable. We believe

**704**

that claimants are entitled to notice of the primary remedy regardless of the existence of other remedies.

Taking Butler's allegations as true, we believe the harm he has suffered is the result of an established procedure of misinforming claimants who do not receive notice by voucher of the prevailing procedures for recovery. The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.