Rafael DIAZ, Plaintiff,

v.

Thomas A. COUGHLIN, III, DOCS Commissioner, et al., Defendants.

94 Civ. 2054 (KMW).

United States District Court, S.D. New York.

Nov. 14, 1995.

---

Plaintiff, pro se.

Amy L. Abramowitz, Assistant Attorney General, New York City, for defendants.

## ORDER

KIMBA M. WOOD, District Judge.

In a Report and Recommendation dated August 22, 1995, Magistrate Judge Grubin recommended that defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) should be granted and plaintiff's motion for a temporary restraining order and preliminary injunction under Federal Rule of Civil Procedure 65 should be denied. In conformity with *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989), the Magistrate Judge's Report explicitly cautioned that failure to file timely objections could constitute a waiver of those objections. On September 1, 1995, at plaintiff's request, I granted an extension until October 27, 1995 for submission of objections. However, no objections have been received. I therefore accept and adopt the Magistrate Judge's rec-ommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (failure to file timely objections constitutes waiver of objections, and district court review not required); *cf. Small,* 892 F.2d 15 (*Arn* applies even to *pro se* litigants where Report contains proper cautionary language).

The clerk of the court is directed to enter judgment dismissing the complaint against defendants with prejudice.

SO ORDERED.

## REPORT AND RECOMMENDATION TO THE HONORABLE KIMBA M. WOOD

GRUBIN, United States Magistrate Judge:

Pending in this action brought by plaintiff *pro se* pursuant to 42 U.S.C. § 1983 are the defendants' motions for judgment on the pleadings and plaintiff's motion for a temporary restraining order and preliminary injunction. For the following reasons, I recommend that defendants' motions be granted and plaintiff's be denied.

### I.

The standard for determining whether to grant a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is the same as that governing a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994); *Ad-Hoc Committee v. Bernard M. Baruch College,* 835 F.2d 980, 982 (2d Cir.1987). The court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993) *and* 507 U.S. 972, 113 S.Ct. 1412, 122 L.Ed.2d 784 (1993); *Ad-Hoc Committee v. Bernard M. Baruch College,* 835 F.2d at 982. "[C]onsideration is limited to the factual allegations in

[the] complaint, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993). A complaint should not be dismissed unless, "after viewing plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Walker v. City of New York,* 974 F.2d at 298 (quotation omitted). *See Sheppard v. Beerman,* 18 F.3d at 150; *Ad–Hoc Committee v. Bernard M. Baruch College,* 835 F.2d at 982. Moreover, *pro se* complaints are to be liberally construed and given even greater latitude than complaints drafted by lawyers. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980) (per curiam); *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam); *Salahuddin v. Coughlin,* 781 F.2d 24, 28 (2d Cir.1986).

## II.

Plaintiff is an inmate at the Green Haven Correctional Facility. Named as defendants, in both their individual and official capacities, are Thomas A. Coughlin, III, the former Commissioner of the New York State Department of Correctional Services, Green Haven Superintendent Christopher Artuz, and three officers at Green Haven, Captain W. Wright, Sergeant C. Robinson and Correction Officer K. Olden. On or about November 2, 1993 plaintiff mailed an order for an electric beard trimmer to J & R Music World, enclosing an institutional check for $53.44 drawn from his personal account. Complaint ¶¶ 9, 10, Ex. A. As set forth in an April 19, 1988 Inter–Departmental Communication from defendant Robinson to the Package Room (the "Package Room Memorandum"), Green Haven's policy is that, upon being notified that an item received in the package room is not permitted under New York State Department of Correctional Services ("NYSDOCS") Directive 4911 (on "Packages and Articles Sent or Brought to Facilities"), an inmate must choose immedi-

ately between having it returned to the sender or having it destroyed, and if he fails to make that choice at the time of such notification it shall be considered contraband, recorded and destroyed. Complaint ¶ 26, Ex. H. Pursuant to decisions of the NYSDOCS Inmate Grievance Program Central Office Review Committee ["C.O.R.C."], it is also a policy at Green Haven that an inmate who questions a package room officer's determination under Directive 4911 should be allowed to speak with a supervisory staff member prior to disposition of the package. Complaint ¶ 24, Exs. F, I, K, L, M & N.

When plaintiff's beard trimmer arrived on November 9, 1993, he was called to the package room. *Id.* ¶ 11. Defendant Olden, the package room officer, refused to deliver it to him, telling him that it was not allowed under Directive 4911. *Id.* ¶ 12. Plaintiff disagreed and insisted that many Green Haven inmates were using beard trimmers. *Id.* ¶ 13. Olden continued to explain the device was not permitted and told plaintiff he must choose between having it returned to the store and having it destroyed. *Id.* ¶ 14. Plaintiff asked to see the package room sergeant or the area supervisor, but Olden denied his request. *Id.* ¶ 15. Plaintiff refused to make the choice and told Olden that he would bring the matter before the "grievance committee or the grievance sergeant" the following morning. *Id.* ¶ 16. By the following morning, however, the trimmer had been destroyed. *Id.* ¶¶ 18–19, *see* Ex. F.

Directive 4911 includes detailed lists of articles that inmates may receive, subject to various restrictions and qualifications, through a NYSDOCS facility's package room. Some items are allowed to inmates throughout the NYSDOCS system; others, such as electric beard trimmers, are allowed only in facilities that issue "local permits" for them. Neither the complaint nor the text of Directive 4911 makes clear whether local permits were available for electric beard trimmers at Green Haven or, if so, what procedures a Green Haven inmate must follow to obtain one. Drawing all reasonable inferences in favor of plaintiff, I will assume for purposes of the instant motions that it is Green Haven policy to issue local permits for

electric beard trimmers, that the ordinary procedure is for such permits to be issued to inmates by the package room officer at the time the inmate receives the item, and that plaintiff therefore had complied with Green Haven's "local permit" requirements.[1]

On November 19, 1993 plaintiff filed two inmate grievances. Complaint ¶ 20. In his first, he attacked the requirement of an immediate choice between return and destruction as, among other things, a violation of the Due Process Clause of the United States Constitution and argued that a "meaningful predeprivation process" was required, either "some kind of a hearing" or a 30–day grace period within which to pursue a grievance. *Id.* ¶¶ 26–27, Ex. D at pp. 2, 4, 7. Defendant Artuz denied this grievance on January 27, 1994, relying on prior C.O.R.C. decisions that

there is no requirement that such items be held for [30 days] while an inmate makes up his mind regarding the disposition. It is only required that the inmate be given a clear notice and the opportunity to make a choice regarding disposition. If the inmate refuses to make a choice, the Package Room staff may proceed to dispose of the property. C.O.R.C. believes it is reasonable, however, to allow an inmate to speak to a supervisory staff member if there is a question regarding the acceptability of a certain item prior to its disposition.

*Id.* Ex. I.[2] On plaintiff's second grievance, which simply requested the return of his trimmer, *id.* ¶ 22, Ex. E, Artuz ruled as follows:

Grievance is accepted in part, to the extent that the disputed item should have been reviewed by the area supervisor prior to destruction. Grievant is referred to the Inmate Claims Process.

*Id.* Ex. G. Plaintiff does not state that he made any attempt to follow up Artuz's ruling by pursuing the matter through the Inmate Claims Process, nor is there anything in the record to suggest that he would not have been reimbursed for his beard trimmer had he done so.

Instead, plaintiff's next step apparently was to commence this action. Plaintiff asserts two claims: (1) the "promulgation, promotion, and sanction" and application of the Package Room Memorandum policy deprived him of his property without procedural due process under the Fourteenth Amendment; and (2) defendants' "arbitrary and unreasonable" and "grossly discriminatory" actions deprived him of his property in violation of his "substantive due process rights" and right to equal protection of the laws under the Fourteenth Amendment. *Id.* ¶¶ 30–34.

### III.

Although plaintiff's first claim can be reasonably construed to assert a procedural due

---

1. With his response to defendants' motions, plaintiff has submitted a September 6, 1990 memorandum to the inmate population from then Green Haven Superintendent Charles J. Scully stating "it [is] the policy of this facility that local permits will be issued for electric beard trimmers. The package room will issue the necessary permits for this item." Plaintiff's Brief in Response ("Plaintiff's Brief"), p. 7, Ex. D. This document may be considered in determining whether to grant defendants' motions for judgment on the pleadings. *See Brass v. American Film Technologies, Inc.*, 987 F.2d at 150. In addition, plaintiff avers in an affidavit and submits affidavits from two inmate representatives on the Green Haven Inmate Grievance Resolution Committee who aver that there are no " 'prerequisite formalities' for an inmate to obtain a local permit" and, indeed, "[a]n inmate cannot apply for a local permit." Affidavit of Rafael Diaz, December 23, 1994, ¶ 3; Plaintiff's Brief, p. 7, Ex. B at ¶ 7, Ex. C. at ¶ 7. Instead, local permits are issued by staff members, usually the officer in charge of the package room, at

the time the items for which they are issued are handed over to the inmate. Plaintiff's Brief, p. 7, Ex. B at ¶¶ 6, 10–13, Ex. C. at ¶¶ 6, 10–13. Although these affidavits are not documents that plaintiff could have possessed or relied on at the time he brought this complaint, these assertions are not inconsistent with the allegations in the complaint, and I will assume for purposes of the instant motions that plaintiff would be able to prove them.

2. At some point prior to issuance of the Package Room Memorandum the policy at Green Haven had been different. A May 5, 1986 memorandum from Superintendent Scully instructed the package room to hold a package for 30 days if the inmate disputed a determination that it was not allowed and indicated that he intended to file a grievance. Plaintiff's Brief, p. 5, Ex. A. In his first grievance plaintiff also argued that N.Y.Comp.Codes R. & Regs. tit. 7, § 724.2 (1986) as well as Directive 4911 permitted the 30–day grace period that had previously been in effect. Complaint Ex. D.

process claim, *i.e.*, that he was denied predeprivation procedural safeguards to which he is entitled under the Due Process Clause, the gravamen of his second, ostensibly "substantive" claim is not as clear. Plaintiff does not contend that, even if Green Haven had clearly prohibited all inmates from receiving electric beard trimmers, he nonetheless would have a constitutional right to receive one. Nor does he claim that defendants deprived him of any substantive constitutional right apart from his right to property. Although plaintiff characterizes defendants' actions as "grossly discriminatory" and asserts that they violated the Equal Protection Clause, his allegations nowhere suggest any basis for a claim of discrimination under that provision. The only conceivable grounds for his "substantive" claim would be that defendants—or, at least, Olden—deprived him of his property by ordering his beard trimmer destroyed (1) even though Green Haven permitted inmates to receive such items and authorized its package room officers to issue local permits for them; and (2) without first giving plaintiff the opportunity he sought, and to which he was entitled under NYS-DOCS policy, to speak with a supervisory staff member. In both respects, accepting the allegations in the complaint as true, Olden's order to have the trimmer destroyed was unauthorized. If these are indeed the grounds for plaintiff's second claim, however, it is not one upon which relief can be granted.

Whether negligent or deliberate, the destruction of an inmate's property caused by a prison officer's unauthorized conduct does not give rise to a claim under the Due Process Clause if the state provides that inmate with an adequate postdeprivation remedy. *Hudson v. Palmer,* 468 U.S. 517, 533–36, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984). *See also Zinermon v. Burch,* 494 U.S. 113, 115, 110 S.Ct. 975, 977, 108 L.Ed.2d 100 (1990); *Daniels v. Williams,* 474 U.S. 327, 330–32, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986); *Parratt v. Taylor,* 451 U.S. 527, 542–44, 101 S.Ct. 1908, 1916–17, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Plaintiff nowhere claims that he was denied adequate postdeprivation procedures by which to seek compensation for the destruction of his property. New York provides such a remedy in Section 9 of the Court of Claims Act. *See Petrenko v. United States,* 859 F.Supp. 647, 651 (E.D.N.Y.1994); *Hernandez v. Jones,* No. 92 Civ. 2451 (MGC), 1993 U.S.Dist. Lexis 10866 at *8–9 (report and recommendation; adopting order at 1993 U.S.Dist. Lexis 11044), 1993 WL 323820 at *4 (S.D.N.Y. Aug. 6, 1993); *Reyes v. Koehler,* 815 F.Supp. 109, 114–15 (S.D.N.Y.1993); *Lee v. Kropp,* No. 90 Civ. 7084 (MBM), 1991 U.S.Dist. Lexis 12192 at *1–2; 1991 WL 177235 at *1 (S.D.N.Y. Aug. 30, 1991), *aff'd,* 962 F.2d 2 (2d Cir.1992); *Johnson v. Coughlin,* No. 89 Civ. 4237 (KC), 1990 U.S.Dist. Lexis 12905 at *15–17, 1990 WL 150469 at *6 (S.D.N.Y. Oct. 2, 1990). *See also* N.Y.Civil Rights Law §§ 79(2), 79a(2) (McKinney 1992) (right to sue while incarcerated). Moreover, Green Haven itself, by its inmate grievance procedures, provided another remedy for these purposes. *See Hudson v. Palmer,* 468 U.S. at 530 n. 9, 536 n. 15, 104 S.Ct. at 3202 n. 9, 3205 n. 15. As discussed above, Superintendent Artuz accepted plaintiff's grievance to the extent of referring him to the Inmate Claims Process because his property had been prematurely destroyed, but plaintiff apparently chose not to avail himself of that remedy, commencing this action instead. In any event, for the foregoing reasons, defendants' motions should be granted with respect to plaintiff's second claim.

## IV.

The existence of postdeprivation remedies does not automatically bar plaintiff's first claim, however. The deprivations involved in *Hudson v. Palmer* and *Parratt v. Taylor* were random and unauthorized and not the result of an established state policy or procedure. Given "the necessity for quick action ... or the impracticality of providing any predeprivation process" in such circumstances, *Parratt v. Taylor,* 451 U.S. at 539, 101 S.Ct. at 1914, "postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide." *Zinermon v. Burch,* 494 U.S. at 128, 110 S.Ct. at 984. *See*

*id.* at 128–30, 110 S.Ct. at 984–85; *Butler v. Castro*, 896 F.2d 698, 700 (2d Cir.1990). In the instant case, however, plaintiff ascribes the destruction of his trimmer not only to Olden's erroneous determination but also to the alleged inadequacy of the procedural policy itself as set forth in the Package Room Memorandum, which, he says, by requiring an immediate choice between return or destruction denied him a "meaningful deprivation process." Complaint ¶ 27. *See Farid v. Smith*, 850 F.2d 917, 925 (2d Cir.1988) (procedural due process attack against a similar policy at the Attica Correctional Facility not precluded by the line of cases beginning with *Parratt v. Taylor* where plaintiff was "challenging the *policy* that gave him the choice of having his property sent away pending the filing of a grievance complaint, or having it destroyed") (emphasis in original). *See also Butler v. Castro*, 896 F.2d at 700; *Curro v. Watson*, 884 F.Supp. 708, 717–18 (E.D.N.Y. 1995); *Koncelik v. Town of East Hampton*, 781 F.Supp. 152, 157–58 (E.D.N.Y.1991); *Anderson v. City of New York*, 611 F.Supp. 481, 491–92 (S.D.N.Y.1985).

Although plaintiff's own pleadings allege, and we find herein the allegation to be correct, that it is also a Green Haven policy that an inmate who contests a package room officer's determination that a package is not permitted under Directive 4911 should be afforded an opportunity to speak to a supervisory staff member before the package room officer orders its disposition, *see* Complaint ¶ 24, Exs. F, I, K, L, M & N, and that Olden violated this policy when he denied plaintiff's request to see the package room sergeant or the area supervisor, plaintiff simply ignores it in his attack on the Package Room Memorandum policy. On the basis of the procedures that plaintiff contends are required to meet the requirements of the Due Process Clause, it must be assumed that his position is that, even with the opportunity to take one's objections to a supervisory staff member, the Package Room Memorandum policy does not meet those requirements. Instead, plaintiff argues, as he did in his inmate grievances, that Green Haven must provide an inmate with either "some form of hearing" or a 30-day grace period within which to file a predeprivation grievance complaint before it

can constitutionally require him to choose between return and destruction of a contested package. Complaint Ex. D at pp. 2, 4, 7; Plaintiff's Brief, pp. 5, 9, 11, 16.

■ To determine what procedural protections the Constitution requires before the State may deprive a person of liberty or property in any particular situation, the following factors are weighed:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoted in *Zinermon v. Burch*, 494 U.S. at 127, 110 S.Ct. at 983.) These factors also guide analysis of the process that is due prisoners before they may be deprived of liberty or property. *See Washington v. Harper*, 494 U.S. 210, 229, 110 S.Ct. 1028, 1040, 108 L.Ed.2d 178 (1990); *Farid v. Smith*, 850 F.2d at 924–25. It is not disputed that for purposes of such analysis plaintiff's trimmer, which he paid for with his own funds, was his property. *See Parratt v. Taylor*, 451 U.S. at 529 n. 1, 536, 101 S.Ct. at 1910, 1913; *Farid v. Smith*, 850 F.2d at 925; *Balabin v. Scully*, 606 F.Supp. 176, 180 (S.D.N.Y.1985).

In terms of the factors in *Mathews v. Eldridge*, it is clear that no additional procedures are constitutionally required. An additional formal procedure for challenging a package room rejection of a package prior to the inmate's choice between its return or destruction, whether it involves some sort of hearing or an otherwise formal review of written reports and submissions or a 30-day grace period in which to present a predeprivation grievance complaint, would entail additional time, labor and paperwork in undertaking such reviews as well as the storage and inventory of packages while they are pending. Although predeprivation proceed-

ings might obviate the need for postdeprivation proceedings in some instances, resulting in no net change in administrative burden, it is likely that they would generally simply add one more administrative layer and burden on the institution, as inmates who are unsuccessful would still file postdeprivation grievance complaints.

Against these "additional fiscal and administrative burdens," plaintiff has put forward a truly modest "private interest." *Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 902. At issue here is not the destruction of property or loss of money spent for that property—which any inmate can avoid merely by choosing to have his package returned—but only the delay and inconvenience of having to use Green Haven's grievance procedure to bring about a package's redelivery. Indeed, even if this court were to impose an additional pre-deprivation procedure on Green Haven, it would entail much the same temporary deprivation. An inmate who successfully establishes that he is entitled to receive a package at such a proceeding still will not receive it until the proceeding is completed. Thus, from the inmate's standpoint, the difference between the current policies at Green Haven and what plaintiff proposes is only the additional time it takes to notify the sender to redeliver the package and for such redelivery to take place.

Plaintiff does not dispute that he would have been able to secure reimbursement and seek redelivery of his trimmer through Green Haven's inmate grievance program. As noted, plaintiff has advanced no reason to doubt the adequacy of the postdeprivation procedures that were available to him. *See* pp. 150–51, above. Thus, in terms of the second relevant factor under *Mathews v. Eldridge*, assuming that an inmate who feels aggrieved in fact chooses to have his package returned, there is no greater risk that an inmate will be erroneously deprived of his property under the current procedures, and the probable value of additional or substitute procedural safeguards is slight. 424 U.S. at 335, 96 S.Ct. at 902. Indeed, in plaintiff's case, Green Haven's inmate grievance system appears to have been fully responsive to his situation, even with his refusal to make any choice at all between the return and destruction of his trimmer.

Thus, in view of the minimal private interest that is involved here as well as the likelihood that any additional layer of procedural protections for reviewing package room decisions would impose increased costs and administrative burdens on Green Haven, its procedural policies with respect to such decisions do not violate the requirements of procedural due process under *Mathews v. Eldridge*.

Our conclusion is reinforced by the recent opinion of the United States Supreme Court in *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), in which the Court makes clear that federal courts should be wary of imposing additional fiscal and administrative burdens on prison officials when, as here, only the "ordinary incidents of prison life" are at stake. 115 S.Ct. at 2299. Criticizing certain decisions that have entailed "the involvement of federal courts in the day-to-day management of prisons," the Court in *Sandin* underscored the duty of federal courts to "afford appropriate deference and flexibility to state officials trying to manage a volatile environment," adding that "[s]uch flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life." *Id.* The flow of miscellaneous articles and packages to inmates, the regulation of which is the subject of Directive 4911, is obviously among the most "ordinary" of such "incidents." The narrow procedural issue raised by plaintiff involves the weighing of a marginal benefit to inmates against a variety of possible effects on the costs and administrative burdens of reviewing inmate packages, matters that are among the most mundane details of prison life and administration and on which *Sandin* enjoins us to be especially careful not to substitute our own "fine-tuning" for that of Green Haven's officials.

In sum, on the basis of the factors in *Mathews v. Eldridge* as well as the considerations set forth in *Sandin v. Conner*, defendants' motions should be granted on this claim as well.

## V.

Plaintiff has moved pursuant to Fed. R.Civ.P. 65 for a TRO and/or a preliminary injunction directing the defendants to refrain from enforcing the Package Room Memorandum policy. Although this motion should not have been filed as there is no evidence that plaintiff ever served it on any of the defendants, it may be disposed of because, in view of the foregoing recommendation, it is clearly without merit and must be denied.[3]

### CONCLUSION

For the foregoing reasons, defendants' motions for judgment on the pleadings should be granted and plaintiff's motion for a TRO and/or a preliminary injunction should be denied.

Copies of this Report and Recommendation were mailed this date to the following:

Mr. Rafael Diaz
# 87–B–1040
Green Haven Correctional Facility
Drawer B
Stormville, New York 12582

Amy L. Abramowitz, Esq.
Assistant Attorney General
State of New York Department of Law
120 Broadway—24th Floor
New York, New York 10271

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of Court and send copies to the Honorable Kimba M. Wood, to the opposing party and to the undersigned. Failure to file objections within ten (10) days will preclude later appellate review of any order that will be entered by Judge Wood. *See* 28 U.S.C. § 636(b)(1); Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure; *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of HHS,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988);

*McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983) (per curiam).

Dated: New York, New York

August 22, 1995.

---

**3.** Plaintiff, of course, can establish neither likelihood of success on the merits nor irreparable injury. *Plaza Health Lab., Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir.1989).