**Jerome CURRY, Plaintiff,**

v.

**Bernard B. KERIK, Commissioner, New York City Department of Corrections and Errol Toulon, Deputy Warden in Command, NIC Correctional Facility, Defendants.**

**No. 00 Civ.4706 (DLC).**

United States District Court, S.D. New York.

April 10, 2001.

---

---

Jerome Curry, Dannemora, NY, Plaintiff, pro se.

Frances Sands, Eugene Sohn, New York City, for Defendants.

### OPINION and ORDER

COTE, District Judge.

In this action, brought under 42 U.S.C. § 1983 ("Section 1983"), plaintiff Jerome Curry ("Curry"), currently incarcerated in Clinton Correctional Facility, asserts that defendants Bernard B. Kerik ("Kerik") and Errol Toulon ("Toulon") violated his rights under the Eighth and Fourteenth Amendments to the United States Consti-

tution by failing to repair the shower at the North Infirmary Command, Correctional Facility ("NIC") in which Curry subsequently fell. Plaintiff seeks compensatory and punitive damages. Defendants have moved to dismiss. For the following reasons, defendants' motion is denied without prejudice to its reinstatement following plaintiff's amendment of his complaint.

### BACKGROUND

The following facts are alleged in plaintiff's complaint and in a grievance form attached to the complaint. At all times relevant to this action, defendant Kerik was the Commissioner of the New York City Department of Correctional Services, defendant Toulon was the Deputy Warden in Command of the NIC, and plaintiff Curry was an inmate at NIC, housed in Unit 2–B, the "isolated area for CMC status inmates at the North Infirmary Command, Correctional Facility." [1]

The shower facility in Unit 2–B "leaked," there were tiles "falling off the wall," and there were "no shower curtains" and "no floor mats." On August 26, 1998, Curry filed a grievance regarding the condition of the shower that states:

> I will [sic] like to notify the grievance office that the shower on the 2–B unit are broken. I want to notify you that the drainers in the shower area are leaking and as the water goes into the drainers it leaks back out on the floor, and the floor stays wet all day long and is very dangerous because the floor gets

---

**1.** The Department of Corrections website characterizes NIC detainees as those "with less serious medical problems and persons with AIDS not requiring hospitalization, as well as high security inmates." *See New York City Dep't of Corr.,* at http://www.ci.nyc.ny.us/html/doc/html/overview.html (last visited March 22, 2001). Neither of the parties describe "CMC status,"

though Judge Koeltl has explained that "CMC" stands for "Central Monitoring Case" and is "an administrative designation designed to allow the DOC to be aware of the housing, case status, and transport of inmates who require special monitoring." *Adams v. Galletta,* No. 96 Civ. 3750(JGK), 1999 WL 959368, at *2 (S.D.N.Y. Oct. 19, 1999).

very slippery. The shower on the 2–B housing unit is [sic] been in that condition for over nine months. A few work orders has [sic] been submitted by a few officers, but nobody pays any attention to the matter. The shower doesn't have any floor mats, and tile on the wall is falling off. There is also a lot of bugs in the shower area, and it smells really bad in there. It needs shower curtains.

The grievance was signed by Curry, nine inmate witnesses, and three corrections officer witnesses. After submitting the grievance, Curry was told that the showers would be repaired.

On September 13, 1998, Curry slipped and fell while leaving the shower and hurt his arm, back, and neck. Curry was taken to the hospital, where he received seven stitches in his arm, and his back and neck were x-rayed.

In his memorandum in opposition to defendants' motion to dismiss, plaintiff asserts additional facts and legal theories to support his claim, namely that defendants: (1) failed to provide plaintiff access to well maintained showers, and put him in danger of "all harm associated with such condition(s)"; (2) disregarded their duties by "negligently and wilfully permitting a Hazardous [sic] condition to exist, by not providing any floor mats or addressing the Hazardous [sic] conditions"; (3) failed to provide him with adequate medical attention or medication following his injury, and (4) conspired to obstruct justice and violate Curry's constitutional rights.

## DISCUSSION

A court may dismiss an action pursuant to Rule 12(b)(6), Fed.R.Civ.P., only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief.' " *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering the motion, the court must take "as true the facts alleged in the complaint and draw[ ] all reasonable inferences in the plaintiff's favor." *Jackson Nat. Life Ins. v. Merrill Lynch & Co.* 32 F.3d 697, 699–700 (2d Cir.1994). The court can dismiss the claim only if, assuming all facts alleged to be true, the plaintiff still fails to plead the basic elements of a cause of action. The court may also consider the grievance form attached to the complaint. *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000).

Where, as here, a party is proceeding *pro se,* this Court has an obligation to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). "Though a court need not act as an advocate for *pro se* litigants, in *pro se* cases there is a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Davis v. Kelly,* 160 F.3d 917, 922 (2d Cir.1998). Nevertheless, a *pro se* plaintiff's "conclusory allegation . . . without evidentiary support or allegations of particularized incidents, does not state a valid claim." *Butler v. Castro,* 896 F.2d 698, 700 (2d Cir.1990).

Assuming that plaintiff was a pretrial detainee at the times relevant to this complaint (as defendants' memorandum of law in support of their motion to dismiss states), the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, governs plaintiff's claims. *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996). Under the Due Process Clause, state officials may subject a pretrial detainee to restrictions that are inherent to confinement in a detention facility so long as those conditions do not "amount

to punishment of the detainee." *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). "Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Id.* at 537, 99 S.Ct. 1861. Rather, the issue is whether the disability is "imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538, 99 S.Ct. 1861. A practice or policy constitutes punishment when there is a showing of expressed intent to punish on the part of detention facility officials, when there is no legitimate non-punitive government purpose to which the restriction or condition may rationally be connected, or when the restriction is excessive in light of that alternative purpose. *Id.* at 538, 99 S.Ct. 1861. Although the Constitution "does not mandate comfortable prisons," *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (citation omitted), where a condition "is not reasonably related to a legitimate goal ... a court permissibly may infer that the purpose of the government action is punishment." *Bell,* 441 U.S. at 539, 99 S.Ct. 1861.

The Supreme Court has held that a detainee's Fourteenth Amendment due process rights concerning the conditions of his confinement are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (citations omitted). *Accord Weyant,* 101 F.3d at 856. A pretrial detainee's pleadings regarding the conditions of his confinement, therefore, are sufficient where they meet an objective and a subjective standard: that is, where they allege that the deprivation is " 'sufficiently serious' such that the deprivation denied the minimal civilized measure of life's necessities" and also allege that the defendants "had a sufficiently culpable state of mind amounting to at least deliberate indifference." *Dawes v. Walker,* 239 F.3d 489, 493–94 (2d Cir.2001) (citations omitted) (Eighth Amendment). *See also Weyant,* 101 F.3d at 856 (Fourteenth Amendment).

■ Plaintiff's allegation that he was exposed to an unsanitary and hazardous showering area for over nine months is "sufficiently serious" to meet the objective element of a Due Process claim based upon the conditions of his confinement. *Compare Mahase v. City of New York,* No. 96 Civ. 6105, 2000 WL 263742, at *5–6 (E.D.N.Y. Jan. 5, 2000) (unsanitary conditions in precinct and central booking and inability to use a clean bathroom, among other deprivations); *Gibson v. City of New York,* No. 96 CIV. 3409(DLC), 1998 WL 146688, at *4 (S.D.N.Y. Mar. 25, 1998) (30–day exposure to "asbestos, insect infestation and perhaps lead paint"); *Mitchell v. Keane,* 974 F.Supp. 332, 344 (S.D.N.Y. 1997) (sewage dripping through the ceiling) *with Butler v. Westchester County,* No. 94 CIV. 8216(SHS), 2000 WL 335539, at *5 (S.D.N.Y. Mar. 30, 2000) (11–day transfer to Sing–Sing, where plaintiff was exposed to "smells, noises and filth"); *McFadden v. Solfaro,* 1998 WL 199923, at *12–13 (S.D.N.Y. Apr. 23, 1998) (water shut off to an "unsanitary" cell for a total of six days and an unpleasant smell in the cell); *Harrison v. Ienuso,* 92 CIV. 6051(JSM), 1995 WL 375915, at *2 (S.D.N.Y.1995) (deprivation of water for one day).

■ Defendants also assert that plaintiff has failed to allege any personal involvement by the two defendants in the events described in his complaint. Liability for damages in a Section 1983 action may not be based on the *respondeat superior* or vicarious liability doctrines. *Monell v. Department of Social Services of*

*the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Nor may a defendant be held liable merely by his connection to the alleged events through links in the chain of command. *Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir.1995). Instead, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [42 U.S.C.] § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citation omitted). Even if they were not actually involved in the events that are the basis of a constitutional claim, supervisors may be personally involved in the constitutional torts of their supervisees when:

   (1) the supervisory official, after learning of the violation, failed to remedy the wrong;

   (2) the supervisory official created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or

   (3) the supervisory official was grossly negligent in managing subordinates who caused the unlawful condition or event.

*Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998).

Plaintiff did not include any specific allegations against the two defendants in his complaint. Nor has plaintiff made any allegations, even read liberally, to support a claim that either defendant conspired to violate his rights. He does, however, make several assertions in his opposition to defendants' motion to dismiss regarding the defendants, including allegations that the defendants are responsible for "ensuring their Facilities were free from harm once being advise [sic] of Hazardous conditions," and that Kerik negligently appointed, trained, and supervised his employees and failed to enforce rules requiring defen-

dants to inspect the NIC and to "address letters, grievances, [and] complaints about repairs to Facilities under his authority." These assertions could withstand defendants' motion to dismiss.

■ Finally, defendants assert that plaintiff alleges only that defendants acted negligently, not with deliberate indifference. It is well established that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (emphasis in original) (prisoner's constitutional rights were not violated when he slipped on a pillow that was left on a stairway). *Accord Rodriguez v. Franklin Corr. Facility,* 93 Civ. 300, 1993 WL 173466, at *1 (N.D.N.Y. May 17, 1993) (prisoner's constitutional rights were not violated when he slipped and fell on an icy sidewalk). Instead, "[a]n official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Although plaintiff asserted in his opposition to defendants' motion to dismiss that defendants acted negligently, the substance of his claim is that defendants failed to repair the shower in Unit 2–B for over nine months, despite the fact that they were alerted to the conditions in the shower area several times, and their failure to make these requested repairs led to his injury. These assertions, if true, would support a finding of deliberate indifference.

In his opposition to defendants' motion to dismiss, plaintiff additionally asserts that defendants failed to provide him with adequate medical attention or medication following his injury. For plaintiff to state a claim for denial of adequate medical care in violation of the Due Process Clause, he must allege that defendants denied him "treatment needed to remedy a serious medical condition and did so because of their deliberate indifference to that need." *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir.2000) (citation omitted). Plaintiff did not include this allegation in his complaint, and his opposition to defendants' motion to dismiss does not describe with specificity the severity of his injuries, the amount of time that he spent in the hospital, the care he was allegedly denied, or the defendants' personal involvement in this alleged constitutional deprivation.

A *pro se* plaintiff should be allowed to amend his pleadings "[u]nless it can be said that under the allegations of this complaint it appears that plaintiff is entitled to no relief under any view of the facts that could be produced in support of his cause of action." *Tarshis v. Riese Organization,* 211 F.3d 30, 39 (2d Cir.2000). Plaintiff is, therefore, granted an opportunity to amend his complaint to incorporate allegations concerning defendants' personal involvement in the events alleged in plaintiff's complaint, as well as to incorporate allegations concerning the denial of medical care that he alleges in his opposition to defendants' motion to dismiss his complaint.

## CONCLUSION

Defendants' motion to dismiss is denied without prejudice to its reinstatement if plaintiff does not amend his complaint by June 1, 2001. If plaintiff fails to amend his complaint by June 1, 2001, this case will be dismissed.

SO ORDERED.