805 F.2d 81
 Joseph T. SULLIVAN, Plaintiff-Appellant,
v.
TOWN OF SALEM, Salem Board of Selectmen, Salem Planning &
Zoning Commission, Linda Phillips, David Bingham, Robert
Parker, Frank K. Cunningham, Hilmar B. Ahnert, Paul W.
Woronik, Gary Komosky, Jennifer Scace, Helen Dutcher, Edward
J. Swider, Jr., Angus L. McDonald & Associates, Inc., Angus
L. McDonald, Gary P. Sharpe, Hugh C. Teel, John Bodman,
Michael Urbanik, and Stanley Wilson, Defendants-Appellees.
 No. 994, Docket 85-9072.
 United States Court of Appeals,
Second Circuit.
 Argued April 2, 1986.
Decided Nov. 10, 1986.
 
 William H. Clendenen, Jr., New Haven, Conn. (David M. Lesser, Robert F. Carter, Clendenen & Lesser, of counsel) for plaintiff-appellant.
 Anthony M. Fitzgerald, Waterbury, Conn. (Carmody & Torrance, of counsel), for defendants-appellees Town of Salem and Salem Board of Selectmen.
 Thomas P. Burne, Farmington, Conn., for defendant-appellee Salem Planning and Zoning Comn.
 H. Bissel Carey, III, Hartford, Conn. (Robinson & Cole, of counsel), for defendant-appellee Phillips.
 John W. Butts, Colchester, Conn., for defendants-appellees Bingham, Dutcher, Teel, Bodman, Urbanik, & Wilson.
 Karen Jansen Casey, Hartford, Conn., for defendants-appellees Angus L. McDonald & Associates, Inc., Angus L. McDonald, & Gary P. Sharpe.
 Before KEARSE, PRATT, and ALTIMARI, Circuit Judges.
 George C. PRATT, Circuit Judge:
 
 
 1
 We are mindful that federal courts should not become zoning boards of appeal to review nonconstitutional land use determinations by the circuit's many local legislative and administrative agencies. Federal judges lack the knowledge of and sensitivity to local conditions necessary to a proper balancing of the complex factors that enter into local zoning decisions. Even were we blessed with the requisite knowledge and sensitivity, due regard for the constitutional role of the federal courts in our dual judicial system would permit us to exercise jurisdiction in zoning matters only when local zoning decisions infringe national interests protected by statute or the constitution. However, when a landowner's constitutional rights are infringed by local zoning actions, our duty to protect the constitutional interest is clear. See, e.g., Village of Belle Terre v. Boraas, 416 U.S. 1, 3, 94 S.Ct. 1536, 1538, 39 L.Ed.2d 797 (1974); Euclid v. Ambler Realty Co., 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926); Shelton v. City of College Station, 780 F.2d 475, 479-80 (5th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 3276, 91 L.Ed.2d 566, (1986); Scudder v. Town of Greendale, 704 F.2d 999, 1002 (7th Cir.1983); Scott v. Greenville County, 716 F.2d 1409, 1419 (4th Cir.1983); Wilkerson v. Johnson, 699 F.2d 325, 328 (6th Cir.1983); Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 832 n. 9 (1st Cir.), cert. denied, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982); Rogin v. Bensalem Township, 616 F.2d 680, 689-90 (3d Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).
 
 
 2
 In this case the United States District Court for the District of Connecticut (Cabranes, J.) granted summary judgment dismissing Sullivan's complaint under 42 U.S.C. Sec. 1983 against the Town of Salem, its officials, and its employees, because the court found that Sullivan had no constitutionally protected right either to have the roads in his real estate subdivision accepted by the town for dedication, or to have certificates of occupancy issued for houses he had constructed on land that had been subdivided according to a town-approved plan. We agree with the district court's conclusion that Sullivan had no constitutionally protected right to require dedication of the subdivision roads. We disagree, however, with its conclusion that plaintiff's right to receive a certificate of occupancy is not protected by the due process clause of the constitution. We therefore reverse on that issue and remand for further proceedings against the affected defendants.
 
 BACKGROUND
 
 3
 Although the record reveals some disagreement over the facts, for purposes of this appeal we view the facts in a light most favorable to Sullivan because summary judgment was granted against him. See Falls Riverway Realty, Inc. v. City of Niagara Falls, 754 F.2d 49, 54 (2d Cir.1985).
 
 
 4
 In 1972 the town's planning and zoning commission approved Sullivan's proposed subdivision plan for development of a tract of land within the town. Immediately, Sullivan installed part of the road system according to town specifications which called for oil and gravel roads, without curbs. Acting under the applicable Connecticut statute, the Salem town meeting accepted those roads as dedicated town roads on December 27, 1972.
 
 
 5
 By 1976 Sullivan had constructed houses on nine of the lots in the subdivision and began to complete the remainder of the road system. This time, however, he installed roads with hard bituminous surfaces rather than the less expensive oil and gravel surfaces he had previously installed. Sullivan informed the then first selectman, the town's building official, and the town's engineer of his proposed enhancement of the roads, and none of them objected to or even questioned the proposed change.
 
 
 6
 In July 1977 Sullivan notified the planning and zoning commission of the completion of the new roads and requested the commission to arrange for the town to accept them. Although the town engineer reported that the roads, as constructed, "exceed[ ] the town requirements" that were in effect when the subdivision plan was originally approved, he recommended additional improvements for the roads and related drainage systems. Those recommendations required work that was not included either in the original subdivision plan or in the subdivision regulations in effect when the subdivision plan was approved in 1972; nevertheless, Sullivan performed the recommended additional work and again requested that the roads be accepted by the town.
 
 
 7
 After further inspections, the commission recommended acceptance of the roads with a bond of not more than $7,500. Although Sullivan posted the bond in March 1978, the board of selectmen took no steps toward accepting the additional roads until it called a town meeting for January 10, 1979. When the matter was raised at that town meeting, however, the chairman of the commission unexpectedly reported that notwithstanding his commission's approval, he personally opposed acceptance of the roads, and the matter was immediately tabled. Another year passed before the commission voted again to recommend acceptance of the roads. On March 12, 1980, the town meeting finally voted their acceptance. This occurred, however, only after Sullivan had commenced suit against the town in Connecticut state court to compel acceptance.
 
 
 8
 Sullivan had pursued acceptance of the roads because he had been informed by the town building official and the first selectman that until the town had accepted dedication of the roads he could not obtain certificates of occupancy for the houses he had constructed in the new portion of the subdivision. Without the certificates of occupancy, of course, Sullivan could not sell his houses. He claims that the town's delays imposed on him added burdens of taxation, investment, and interest on construction loans obtained to build those houses, caused him great loss, and eventually required him to deed the entire development to the bank in lieu of mortgage foreclosure. Sullivan brought this suit to recover damages caused by the town's refusals to accept dedication of the roads and to issue the certificates of occupancy.
 
 DISCUSSION
 
 9
 Sullivan's Sec. 1983 suit claims primarily that the town's conduct deprived him of property without due process of law in violation of the fourteenth amendment to the federal constitution. Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), laid to rest the contention that the fourteenth amendment and Sec. 1983 protect "personal rights", but not "property rights". Relying on the legislative history to the direct lineal ancestor of Sec. 1983, the Supreme Court there noted that the rights the statute sought to protect were the enjoyment of life and liberty, with the right to acquire and possess property of every kind, and that the protection of property as well as personal rights was intended by congress. Id. at 545-46, 92 S.Ct. at 1118-19. According to the Court,the dichotomy between personal liberties and property rights is a false one. Property does not have rights. People have rights. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth, a "personal" right, whether the "property" in question be a welfare check, a home, or a savings account. In fact, a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other.
 
 
 10
 Id. at 552, 92 S.Ct. at 1122.
 
 
 11
 In many due process cases, as here, the issue is not simply whether property rights are protected, but instead whether the interest claimed by the plaintiff qualifies as "property" within the meaning of the constitution. The Supreme Court, in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), summarizing the "attributes" of constitutionally protected property rights, noted: "To have a property interest in a benefit, a person clearly must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. at 577, 92 S.Ct. at 2709. The question can be particularly difficult in cases involving governmental regulation of the manner in which an owner may use his property. On this appeal Sullivan claims he was deprived of property in two ways: one, by the town's foot-dragging in accepting dedication of roads which, as built, were superior in quality to those required by the applicable town regulations, and two, by the town's refusal without lawful basis to issue certificates of occupancy for his completed houses.
 
 
 12
 The district court found no merit in Sullivan's claim of a property right to have the roads accepted, and we agree. We further find no merit in Sullivan's related claim with respect to the town's delay in accepting the roads. Connecticut law grants a developer no legitimate expectation or entitlement to have his subdivision roads accepted. The statutory authority granted to a Connecticut municipality to accept as a public highway any proposed highway within its borders is a discretionary "may", not a mandatory "shall". Conn.Gen.Stat. Sec. 13a-48. Lacking any legitimate expectation or entitlement to have the additional roads ultimately accepted, see Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); cf. Medina v. Rudman, 545 F.2d 244, 251 (1st Cir.1976), cert. denied, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 177 (1977), Sullivan suffered no independent constitutional deprivation from the time-consuming procedures followed by the town in handling Sullivan's application for acceptance. This is particularly true because it was within Sullivan's power under Connecticut law to convene a town meeting to consider the question of acceptance, without the direct participation of the planning and zoning commission or the board of selectmen. All that was needed was the application of 20 qualified voters. See Conn.Gen.Stat. Sec. 7-1. In short, we find no error in the district court's rejection of Sullivan's claims with respect to acceptance of the roads.
 
 
 13
 Sullivan's certificate of occupancy claim, however, rests on a different footing and, contrary to the summary holding below, may have merit. The district court reasoned that Sullivan's claim of entitlement to certificates of occupancy rested upon a claimed "right to develop" the subdivided property which, in turn, arose from the commission's having approved the subdivision plan. However, according to the district court, the granting of a certificate of occupancy is an act separate and distinct from the granting of a subdivision approval, and since the building official was required to exercise discretion in determining whether or not to issue a certificate of occupancy, the district court concluded that Sullivan could not have had a legitimate claim of entitlement to the certificates. Therefore, according to the court, with no property interest in the certificates, plaintiff had no claim under the due process clause even if the refusal to issue the certificates of occupancy was in clear violation of state law.
 
 
 14
 As authority, the district court relied upon Yale Auto Parts, Inc. v. Johnson, 593 F.Supp. 329, 332 (D.Conn.1984), aff'd, 758 F.2d 54 (2d Cir.1985). On our affirmance of the Yale Auto Parts decision, however, we recognized the difficulty of determining whether an applicant for a license or certificate of approval has presented a legitimate claim of entitlement under state law or merely a unilateral hope or expectation of some benefit, 758 F.2d at 58, and we concluded that
 
 
 15
 the question of whether an applicant has a legitimate claim of entitlement to the issuance of a license or certificate should depend on whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted. Otherwise the application would amount to a mere unilateral expectancy not rising to the level of a property right guaranteed against deprivation by the Fourteenth Amendment.
 
 
 16
 Id. at 59.
 
 
 17
 By that standard we did not intend to remove from constitutional protection every application for a license or certificate that could, under any conceivable version of facts, be the subject of discretionary action; a theoretical possibility of discretionary action does not automatically classify an application for a license or certificate as a mere "unilateral hope or expectation". On the contrary, our standard was intended to be a tool capable of measuring particular applications to determine if the applicant had a legitimate claim of entitlement based on the likelihood that without the due process violation that application would have been granted.
 
 
 18
 When this standard is applied to Sullivan's request for the certificates of occupancy, it is apparent that triable issues were raised that require further proceedings. Sullivan contends that from at least 1970 through 1981 the town building official followed a practice of entertaining oral applications for certificates of occupancy. The building official would then review the construction and if appropriate, would himself fill out a formal written application and have the applicant sign it.
 
 
 19
 When Sullivan orally requested certificates of occupancy for his completed houses, he was told both by the building official and by the first selectman that the town would issue no certificates of occupancy for Sullivan's new houses until the roads had been accepted for dedication. The town concedes that there was no lawful basis for refusing the certificates on this ground. No question was raised as to matters over which the building official might have discretionary authority, such as the quality of construction of the houses, their compliance with the subdivision plan, or whether they satisfied building code and zoning requirements. The only reason given for refusing the certificates of occupancy, a refusal that eventually caused the threatened foreclosure of the mortgage on the subdivision development and substantial loss to Sullivan, was that certificates of occupancy would not be issued until the roads were accepted. By imposing this requirement, which is not only unauthorized by, but also contrary to, Connecticut law, Sullivan contends that the town through its building official and first selectman denied him certificates of occupancy to which he was otherwise entitled and thereby deprived him of property without due process.
 
 
 20
 If, as we have assumed for purposes of the appeal, Sullivan's contention that his houses fully conformed to all other requirements is true, then, under Connecticut law he was entitled to the certificates of occupancy that would have enabled him to sell the houses for use in the manner they were intended. See Conn.Gen.Stat. Sec. 29-265. If the houses complied with the applicable state and municipal requirements, there was no element of discretion or judgment remaining for the building official to exercise in determining whether to issue the certificates. Under those circumstances, denial of the certificates of occupancy solely because the roads had not been accepted would constitute a deprivation of property without due process. See Acorn Ponds v. Incorporated Village of North Hills, 623 F.Supp. 688, 692 (E.D.N.Y.1985). On this issue, therefore, we reverse and remand for further proceedings to determine whether in fact the houses did meet all applicable requirements and whether the certificates of occupancy were refused solely because the roads had not been accepted.
 
 
 21
 Questions remain as to who may be held liable--the town; the building official, Stanley Wilson; the first selectman, Hugh C. Teel; or the chairman of the commission, Linda Phillips--and whether they should be held liable separately or jointly. Based on the affidavits before the court, we cannot yet tell which of these defendants would have to answer for the alleged unlawful deprivation.
 
 
 22
 Under Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the town itself could be liable if its policy or the implementation thereof caused the denial of the certificates of occupancy and the deprivation of property. Under that principle, it must be determined whether it was the policy of the town generally to refuse certificates of occupancy to residential developers until their roads had been accepted for dedication, or whether this requirement was imposed by the building inspector only randomly and without the authority of the town as an entity.
 
 
 23
 We have not considered, but do not mean to foreclose at this stage, a Monell-type claim against the town, even in the absence of a general policy, based on the conduct of its building official regarding certificates of occupancy. See Pembaur v. City of Cincinnati, --- U.S. ----, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). The question whether defendant Wilson had final policy-making authority in this regard is one of state law. See id. at 1300.
 
 
 24
 A resolution of the issues as to the town's policy will help determine whether, as defendants contend, Sullivan's Sec. 1983 claim is barred by Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). If the conduct of the building official either established or was pursuant to town policy, Parratt and its progeny, which apply only to random, unauthorized conduct, are simply inapposite to this case. See id. at 541, 101 S.Ct. at 1916; Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36, 102 S.Ct. 1148, 1157-58, 71 L.Ed.2d 265 (1982). On the other hand, if Sullivan has no claim under Monell or Pembaur because Wilson's conduct was random and unauthorized, this action might still properly be dismissed if Connecticut law provided an adequate post-deprivation remedy. Parratt, 451 U.S. at 544, 101 S.Ct. at 1917; Hudson v. Palmer, 468 U.S. 517, 530-34, 104 S.Ct. 3194, 3202-04, 82 L.Ed.2d 393 (1984).
 
 
 25
 One form of adequate remedy might lie in an administrative appeal, another in judicial review of the administrative decision. See Eastway Construction Corp. v. City of New York, 762 F.2d 243, 250 (2d Cir.1985); Oberlander v. Perales, 740 F.2d 116, 120 (2d Cir.1984). Under Connecticut law, apparently some, but not all, decisions by the building official are final and unreviewable. See Conn.Gen.Stat. Sec. 29-266. Although Sec. 29-266 provides for review by a municipal board of appeals of certain decisions of building officials depending on the type of decision and who seeks review, its terms do not appear to cover Sullivan's situation--an owner dissatisfied with denial of a certificate of occupancy. How the Connecticut courts have interpreted this provision has not been briefed, and even though we have been advised by Sullivan's counsel that Salem has not formed such a board to hear appeals from the building official's decisions, we look no further, on this appeal, than the statute itself and leave it to the district court to determine whether the building official's action in this case was final and whether adequate review procedures were available.
 
 
 26
 On remand, therefore, the district court should consider, in the light of both the deference Connecticut grants to building officials and the Supreme Court's decision in Pembaur, whether building official Wilson's refusal to consider Sullivan's request for certificates of occupancy "may fairly be said to represent official [town] policy". Monell, 436 U.S. at 694, 98 S.Ct. at 2037-38. If Wilson's actions did not establish or implement town policy, then the district court must further decide whether Connecticut provides an adequate post-deprivation remedy through Sec. 29-266, by an action for damages or otherwise, for Wilson's random and unauthorized infringement of Sullivan's property right. Since no issue of qualified immunity for any of the individual defendants has been advanced on this appeal, we express no opinion on that subject, and leave it for the district court to explore, if necessary.
 
 
 27
 Sullivan also suggests in his affidavit and through counsel's arguments that the chairman of the planning and zoning commission, Linda Phillips, was a builder and competitor of his. If denial of Sullivan's certificates of occupancy was caused by the chairman's requiring or encouraging the first selectman and the building official to act contrary to state law by unlawfully imposing on Sullivan a false requirement for acceptance of the roads, then under the philosophy of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), some or all of those officers might be held liable, individually, for having unconstitutionally deprived Sullivan of the certificates of occupancy to which he was entitled.
 
 
 28
 On the other hand, if those officers, including the building official, were simply implementing an established policy of the town, then they would have available to them a defense of qualified immunity from personal liability, provided they can establish objective good faith in relying on the town's policy. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Of course, if it was established municipal policy, rather than unauthorized improper conduct by the building official, the first selectman, and the chairman, acting alone or together, that caused the withholding of Sullivan's certificates of occupancy, there would be no qualified immunity defense available to the town, Owen v. City of Independence, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980) (municipality may not assert officer's good faith as defense), and the municipality itself would be answerable for whatever damages Sullivan suffered.
 
 
 29
 Sullivan has also asserted a claim against the town engineer who, he contends, performed services while subject to a conflict of interest in that the engineer also performed services for another competitor of Sullivan who was active in the local housing market. These allegations against the engineer, however, raise no constitutional issue and were properly dismissed. Also properly dismissed by the district court were the claims against the board of selectmen, the planning and zoning commission, and the individual members thereof other than Teel and Phillips.
 
 
 30
 Finally, Sullivan urged below an equal protection claim, suggesting discrimination against him because of his Irish ancestry. We do not regard the claim on appeal, adverted to only in a footnote, as being properly presented. In any event, the claim was properly dismissed because Sullivan failed to present any factual support for his allegations of discrimination.
 
 CONCLUSION
 
 31
 The claims that present issues requiring further proceedings are those against the town itself, based on the possibility that its policy may have deprived Sullivan of property by illegally withholding the certificates of occupancy until the roads were accepted, and those against building inspector Wilson, first selectman Teel, and chairman Phillips, either separately or together, on the theory that they acted in their individual capacities, without town authorization, and contrary to state law, when they refused Sullivan's request for certificates of occupancy.
 
 
 32
 Reversed and remanded as to defendants Wilson, Teel, Phillips, and the Town of Salem; affirmed as to all other defendants.