**EQUUS ASSOCIATES LTD., Plaintiff,**

**v.**

**The TOWN OF SOUTHAMPTON, the Town Board of the Town of Southampton, Fred Thiele, Martha Rogers, Douglas Penny, Patrick Heaney, Jr., Michael Walsh, George Starvropoulos, Marietta Seaman, James Needham, Patrick Heaney, Sr., and Patricia Neuman, Defendants.**

**No. CV 94–4274(ADS).**

United States District Court,
E.D. New York.

Aug. 27, 1997.

**456**

Fischbein, Badillo, Wagner, Harding, New York City, for Plaintiff; Andrew Messite, of counsel.

Rosenstein, McKenna, & Bonney, Middletown, NY, for Defendants; Monte J. Rosenstein, of counsel.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This section 1983 action arises from the claims of the plaintiff, Equus Associates Ltd. ("Equus" or the "plaintiff"), that the defendants, the Town of Southampton (the "Town"), its Town Board, the current Town Board members, Fred Thiele, Martha Rogers, Douglas Penny and Patrick Heaney, Jr., the past Town Board members who sat on the Board during the relevant time period, George Starvropoulos, Marietta Seaman, James Needham, the late Patrick Heaney, Sr. and Patricia Neumann, and the Town Attorney, Michael Walsh (collectively the "defendants"), unlawfully denied its application for a permit to erect six prefabricated dirt floor barns on its property for the purpose of breeding, and selling polo ponies. According to the First Amended Complaint, the defendants denied the plaintiff's permit application in ·violation of its constitutional rights to due process, equal protection, and just compensation under the takings clause. Presently before the Court are the defendants' motion for summary judgment and the plaintiff's cross motion for summary judg-

ment with respect to liability on its due process claim, pursuant to Fed.R.Civ.P. 56.

### I. *Background*

The plaintiff, Equus Associates Ltd., is a New York corporation in the business of breeding, raising, training, stabling and selling horses for recreational riding and playing polo. As stated above, the defendants are the Town of Southampton, its Town Board, past and present Town Board members and the Town Attorney.

During the relevant period, the plaintiff was the assignee of a lease of approximately 65 acres of farmland located in Bridgehampton, New York in the Town of Southampton. The lessors, Anthony E. Tiska, Jr. and Gail O. Tiska were participants in the Farmland Preservation Program ("Farmland Program" or "Program"), which was designed to preserve agricultural open lands within the Town. Under the Program, in 1982, the Tiska sold their "development rights to the Town retaining the right to use the property for 'agricultural production' as that term is used in section 301 of the New York State Agricultural and Markets Law" and entered an indenture to this effect. According to the plaintiffs, the Tiskas became participants in the Farmland Program in reliance upon a amendment to the Town Code of the Town of Southampton ("Town Code") enacted on May 26, 1981 pursuant to which the Town Board added "Horse Back Riding Academy and Horse Stabling Facilities" to the list of permissible uses for land governed by the Program (the "1981 amendment"). Equus alleges that as result of the 1981 amendment, the number of participants in the Farmland Program increased from one to 15.

On February 28, 1991, Equus applied to the. Town Board for a permit to build six prefabricated dirt floor barns which could be removed without difficulty by subsequent owners. The barns would occupy only one-third of one acre on the 65 acre plot. The plaintiff alleges that at the time of the application the lands of two other Farm Program participants David Birdsall and Seong Jik Moon, were being used for horse riding and horse stabling.

Construction of such barns is governed by the Town Code § 330–50D(2), which states:

Construction permit. The Town Board shall be empowered to authorize construction by the issuance, after a public hearing, of a permit, as follows:

(a) For the construction of buildings and other structures customarily accessory and incidental to agricultural production as same is presently defined by § 301 of the New York State Agriculture and Markets Law; provided, however, that no such permit shall be issued for the erection or maintenance of any building or other structures intended for human habitation.

(b) All construction permit applications shall be referred by the Town Board to the Farmland Committee which shall investigate the application and report its recommendations to the Town Board.

(c) Any construction permit issued pursuant to this section shall be subject to such conditions and limitations as the Town Board shall see, fit, in the reasonable exercise of its discretion, to impose.

The plaintiff's permit application was referred to the Town's Farmland Committee to investigate. On April 16, 1991, the Committee issued it report concluding that:

the inclusion of horse farms, horse stabling facilities, and horse back riding academies was something that was within the general contemplation of the Town at the time of the passage of the Development Rights Program and immediately thereafter, as witnessed by the 1981 amendment/clarification of the Town Code expressly to include horseback riding academies and horse stabling facilities to permitted agricultural uses as defined by Section 301 of the Agriculture and Markets Law.

The Farmland Committee further determined that because the Tiskas joined the Farmland Program after the 1981 amendment, it would be reasonable to conclude that in selling their development rights to the Town, they relied on the fact that the land could be still be used as a horseback riding academy or horse stabling facility.

According to Equus, during the application process, the Town Board members began receiving political pressure to deny the permit. As a result of this pressure, argues the plaintiff, the Town Attorney, Michael Walsh, submitted two opinion letters to the Town Board dated April 23, 1991, and August 7, 1991. In these letters, Walsh maintains that the New York State Constitution and the General Municipal Law prohibited the plaintiff's proposed use of the land, and that equestrian uses of the property would be contrary to the intent of the Farmland Program. Affidavit of Andrew B. Messite, Dec. 6, 1996 ("Messite Aff") Ex. E, F.

The Town Board then requested an "advisory opinion" from the Town Planning Board regarding the plaintiff's permit application. On June 20, 1991, the Town Planning Board issued an opinion asserting that the 1981 amendment was "legally defective." However, the Town Planning Board conceded that:

Given that some farmers may have signed agreements with the Town which relied on the Code Amendment of May 26, 1981, the Town Board should examine the procedures for allowing such farmers to purchase back from the Town their former development rights.

According to the First Amended Complaint, on September 9, 1991, an Equus representative was advised by an unidentified Town Board member, that the application would be denied because of the upcoming election in which the Equus permit could cause problems. On September 10, 1991, the Town Board rejected the plaintiff's permit application by a three to one vote. Defendants Starvropoulos, Needham and Seaman voted to deny the permit. Defendant Neumann voted to grant the application.

After the Town Board rendered its decision, Equus filed an Article 78 proceeding in New York Supreme Court. The Town brought a separate action for a permanent injunction to prevent the plaintiff from engaging in equestrian activities on the property. On January 24, 1992, the state court dismissed the plaintiff's Article 78 proceeding

and entered a permanent injunction against Equus. In reaching its decision, the court relied on the fact that the Tiskas' indenture agreement did not expressly reference the 1981 amendment to the Town Code and the opinion of the State Board of Equalization Assessment which determined that horse breeding for purposes other than sale did not constitute agricultural production under state law.

On appeal, the Second Department vacated the injunction and granted the plaintiff's Article 78 petition and request for a construction permit. *See Town of Southampton v. Equus Assocs., Ltd,*, 201 A.D.2d 210, 615 N.Y.S.2d 714 (2d Dep't 1994). In reaching its conclusion, the Appellate Division framed the issue as "whether [the plaintiff's] proposed use of its leased property to raise, train and sell polo ponies constitutes 'agricultural production' within the meaning of Agriculture and Markets Law § 301, and therefore should have been permitted by the Town of Southampton." *Id.* 615 N.Y.S.2d at 714. In answering this question in the affirmative, the court relied on the language of section 301 and the Third Department's decision in *Kinderhill Farm Breeding Assocs. v. Walker,* 54 A.D.2d 811, 388 N.Y.S.2d 43 (3d Dep't 1976), *aff'd,* 42 N.Y.2d 919, 397 N.Y.S.2d 1006, 366 N.E.2d 1360 (1977). Agriculture and Market Law § 301 defines "Agricultural production" as "[t]he production for commercial purposes of all crops, livestock and livestock products, including, but not limited to the following: ... horses." *Equus,* 615 N.Y.S.2d at 715. Consistent with this definition, in *Kinderhill,* the Third Department held that the breeding of thoroughbred race horses constituted agricultural production as defined in section 301. *Id.* Further, the Second Department found that the Equus's proposed use of the land was consistent with the purpose of the Farmland Program, which is to:

provide the open rural land use environment so highly valued by those persons who support the Town of Southampton's recreational and resort economy, as well as by year-round residents ... Therefore, as a matter of public policy, the Town of Southampton designates those specific land areas as the Agricultural Overlay District in order to encourage and to make economically feasible *the preservation of these lands for agricultural purposes.*

*See id.* at 716, quoting, Town Code, article X § 33047[A] (emphasis added by the Appellate Division). Finally, the court relied on a letter dated October 11, 1991, submitted by Ned B. Stiles, a board member of the Group for the South Fork which was an intervenor in the Article 78 proceeding. The letter stated that the Town Board's decision to deny the permit was political rather than environmental and grounded on an "unfounded" rumor that Equus sought to erect a polo stadium and parking lot. *Id.* As a result of these factors, the Appellate Division ordered that Equus's application for the construction permit be granted.

The plaintiff's First Amended Complaint alleges three causes of action based on the defendant's alleged violation of its constitutional rights under the due process clause, the equal protection clause and the takings clause. The defendants move for summary judgment pursuant to Fed.R.Civ.P. 56, arguing that the due process claim is untenable as a matter of law, and that they are shielded from civil liability under the doctrine of qualified immunity. The plaintiff cross moves for summary judgment with respect to liability on its due process claim.

## II. *Discussion*

### A. *Summary judgment standard*

A court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir. 1996), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986),

*cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *West–Fair Elec. Contractors v. Aetna Cas. & Surety Co.,* 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed.R.Civ.P. 56(e)). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby.,* 477 U.S. at 249, 106 S.Ct. at 2510; *see Vann v. City of New York,* 72 F.3d 1040 (2d Cir.1995).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir. 1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128 (2d Cir.1996); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue finding", not "issue resolution." *Gallo v. Prudential Residential Servs., Ltd., Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994).

**B.** *Substantive due process*

 Both the plaintiff and the defendants move for summary judgment with respect to liability under the substantive due process claim. "Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is 'incorrect or illadvised.' " *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995), quoting, *Lowrance v. Achtyl,* 20 F.3d 529, 538 (2d Cir.1994). When considering this issue, the federal courts should be mindful not to evolve into zoning boards of appeal to review nonconstitutional issues of land use determinations by local administrative agencies. *Sullivan v. Town of Salem,* 805 F.2d 81, 82 (2d Cir.1986). In order to establish a property interest sufficient to support a substantive due process claim, the plaintiff must demonstrate a " 'legitimate claim of entitlement' to the benefit in question." *Crowley v. Courville,* 76 F.3d 47, 52 (2d Cir.1996), quoting, *Zahra v. Town of Southold,* 48 F.3d 674, 680 (2d Cir.1995) (internal citation omitted). In *Walz v. Town of Smithtown,* 46 F.3d 162 (2d Cir.), *cert. denied,* 515 U.S. 1131, 115 S.Ct. 2557, 132 L.Ed.2d 810 (1995), the Second Circuit set forth the standard for a substantive due process claim in land use cases as follows:

When an unsuccessful applicant for a governmental permit claims that an official or regulatory body has violated due process, the framework for evaluating the claim is the well-developed property interest analysis, which has its origins in the Supreme Court's decision in *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The focus of the analysis is on the nature of the applicant's interest in the approval being sought, specifically whether the applicant has a clear entitlement to the approval sought from the government official or administrative body. *See. e.g., RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911 (2d Cir.) (analyzing whether applicant possessed property interest in building permit), *cert. denied,* 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989); *Sullivan v. Town of Salem,* 805 F.2d 81, 84–85 (2d Cir.1986) (analyzing whether applicant possessed property interest in certificate of occupancy); *Yale Auto Parts v. Johnson,* 758 F.2d 54, 58–60 (2d Cir.1985) (analyzing whether applicant possessed property interest in permit to use property as automobile junkyard).

*Walz,* 46 F.3d at 167–68. The key to determining the existence of a property interest is the extent to which the deciding authority may exercise discretion in reaching its decision rather than on the estimate of the likelihood of a certain decision. *Id.* at 168; *RRI*

*Realty Corp.,* 870 F.2d at 918. If the governing body has discretion in deciding whether to issue the permit, the federal courts will not sit as a superseding body to local administrative agencies. *See Zahra,* 48 F.3d at 680; *Sullivan,* 805 F.2d at 82. If there is an adequate property interest, the plaintiff must then show that the defendants acted in an arbitrary or irrational manner depriving him of that interest. *See Crowley,* 76 F.3d at 52.

Of particular relevance to the analysis are the Second Circuit's decisions in *Walz* and *Crowley.* In *Walz,* the town code provided that upon the satisfaction of certain threshold requirements, namely that permit applications be filed in writing and contain specified information "a permit shall be issued in the name of the Superintendent of Highways of the Town of Smithtown." *Walz,* 46 F.3d at 168 (emphasis added). Relying on this mandatory language, the court held that the Superintendent had "no discretion to decline to issue a permit" where the application contained the required information. As a result, the plaintiffs had a property right in the permit sufficient to invoke the due process clause. *Id.*

In *Crowley* however, the court reached the opposite conclusion. In that case, the Zoning Board had discretionary authority to grant variances where "there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter [of the regulations]." *Crowley,* 76 F.3d at 52. The regulations further contained "[g]uiding principles" for the exercise of authority, including a provision that "[e]very variance granted by the [Zoning Board] may be made subject to such conditions and safeguards as the Board shall deem to be applicable to the particular case." *Id.* Relying on the discretion provided to the Zoning Board under these provisions, the Second Circuit held that the plaintiff did not have a sufficient property interest to maintain a substantive due process claim. *Id.*

■ Applying these standards, the Court finds that the plaintiff's due process claim is closer to *Crowley* than *Walz.* The Southampton Town Code provides that the Town Board is "empowered to authorize construction by the issuance, after a public hearing, of a permit" under certain conditions. Town Code 330–50(2). This language is not mandatory, and directs that the Town Board issue a permit only in the event that certain predicate requirements are satisfied. *Cf. Walz,* 46 F.3d at 162. Rather, section 330–50(2), by its terms abdicate authority over the issuance of permits to the Town Board Subsection (b) provides that permit applications shall be referred to the Farmland Committee to investigate the application and report its recommendations to the Town Board. In the Court's view, it seems unlikely that such an elaborate mechanism would be required where there was no discretion in the governing body with respect to the issuance of the permit. Further, subsection (c) provides that "[a]ny construction permit … shall be subject to such conditions and limitations as the Town shall see fit, in the reasonable exercise of its discretion, to impose." This language grants the same type of discretion on the Town Board that the Second Circuit relied upon in *Crowley* to find that the plaintiff lacked a sufficient property interest to maintain his claim. Accordingly, the Court finds that under the Southampton Town Code, the Town Board maintains sufficient discretion with respect to the issuance of construction permits to defeat the plaintiff's substantive due process claim. As a result, the defendants' motion for summary judgment with respect to this cause of action is granted pursuant to Fed.R.Civ.P. 56, and the plaintiff's motion for summary judgment with respect to the defendants' liability on this claim is denied.

■ In reaching this conclusion, the Court recognizes the plaintiff's argument that this Court is bound by the decision of the Second Department which mandates summary judgment in favor of Equus. Under the Full Faith and Credit statute, 28 U.S.C. § 1738, federal courts are obligated to give a state court judgment the same preclusive effect that the judgment would receive in the state courts. *Giakoumelos v. Coughlin,* 88 F.3d 56, 59 (2d Cir.1996). Under New York law, the doctrine of collateral estoppel, or issue preclusion, applies when a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding and: (1) the same issue was necessarily de-

cided in the prior action and is decisive of the present action, and (2) there was a full and fair opportunity to litigate the decision said to be controlling. *Id.,* citing, *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969); *Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir.1995). The moving party has the burden of demonstrating the identity of the issues and the opposing party has the burden of showing lack of full and fair opportunity to litigate the issue in the prior action. *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 456, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985).

According to Equus, "[t]he State Court determined that Equus had a right to the sought after construction permit, that the Town Board had no discretion to deny Equus' application in light of the proposed agricultural use for the permit and the Property, that the Town Board's denial was contrary to existing law and without basis and was, in fact, politically motivated." Pl. Mem. of Law at 18–19. The Court disagrees.

In the Court's view, the plaintiff has established the identity of parties and a full and fair opportunity to litigate all issues appropriately before the state court. However, Equus has failed to demonstrate an identity of issues. The state court action arose in the context of an Article 78 proceeding. The standard of review in such cases regarding the issuance of a permit is whether the petitioner, namely Equus, can demonstrate that the respondent's determination was "arbitrary, capricious or an abuse of discretion." *Burger King Corp. v. County of Suffolk,* 121 A.D.2d 494, 503 N.Y.S.2d 157, 158 (2d Dep't 1986), citing, *Token Carpentry, Inc. v. Hornik,* 92 A.D.2d 868, 459 N.Y.S.2d 831 (2d Dep't 1983). Accordingly, the issue before the Second Department in Equus was whether the defendants abused their discretion or acted in an arbitrary and capricious manner when they determined that the plaintiff's proposed use of its leased property, namely to raise, train and sell polo ponies, did not constitute "agricultural production" within the meaning of Agriculture and Markets Law § 301. See *Equus,* 615 N.Y.S.2d at 714.

The threshold inquiry with respect to a substantive due process analysis however, is not whether the defendants abused their discretion. Rather, the plaintiff must demonstrate that the defendants had virtually no discretion at all, *see, e.g., Zahra,* 48 F.3d at 680, an issue never addressed by the state court. Accordingly, while the Court acknowledges that the Second Department's decision in *Equus* is entitled to full faith and credit, it does entitle the plaintiff to summary judgment with respect to liability in its substantive due process claim.

### C. Qualified immunity

The defendants further move for summary judgment on the basis of qualified immunity. Government actors who perform discretionary functions are protected from liability for civil damages where their conduct does not violate a clearly established constitutional right of which a reasonable person would have known. *Doe v. Marsh,* 105 F.3d 106, 109 (2d Cir.1997); *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996); *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995). Even where the plaintiff's rights and the scope of the officials' permissible conduct are clearly established, the qualified immunity defense protects a governmental actor if it was "objectively reasonable" for the actor to believe that his actions were lawful at the time of the alleged unlawful conduct. *Marsh,* 105 F.3d at 109–10; *Lennon,* 66 F.3d at 420.

At the outset, the Court recognizes that "the defense of qualified immunity protects only individual defendants sued in their individual capacity, not governmental entities...." *Rodriguez v. City of New York,* 72 F.3d 1051, 1065 (2d Cir.1995), citing, *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991). Although it is not entirely clear from the plaintiff's papers, appears that the individual defendants are being sued in their individual capacities. Nevertheless, for the sake of a complete record, the Court notes that to the extent that the defendants attempt to invoke the doctrine of qualified immunity to protect the Town, the Town Board, or the individual defendants acting in their official capacities, from civil liability for damages, their motion is denied.

**462**

The issue with respect to the claims against the Board members acting in their individual capacities is more complicated. Given that the Court has already determined that the Town Board does maintain a certain amount of discretion with respect to the issuance of construction permits, it would appear that invocation of the qualified immunity defense might be appropriate. However, according to the Second Department, the Board's original decision to deny Equus the permit was at least, in part, political in nature. *Equus,* 615 N.Y.S.2d at 716. In the Court's view, if the plaintiff were able to demonstrate at trial that the Board's decision was so political as to constitute a violation of its First Amendment rights, application of the qualified immunity defense may be inappropriate. Accordingly, the Court finds that the better approach would be to revisit this issue at the end of the plaintiff's case at trial rather than on a motion for summary judgment. As a result, the defendant's motion for summary judgment with respect to the Board members acting in their individual capacities is denied without prejudice and with leave to resubmit. *See DiMarco v. Rome Hosp. & Murphy Memorial Hosp.,* 952 F.2d 661, 665 (2d Cir.1992) (recognizing that resolution of a qualified immunity issue may be better left for trial where the factual underpinnings of the defense are in dispute); *see* Martin A. Schwartz & John E. Kirkin, 1B Section 1983 Litigation § 9.34 (3d ed.1997).

Finally, the Court notes that defendant Patrick Heaney, Sr. is deceased. Accordingly, the plaintiff must amend his complaint to either moves against a representative of Heaney's estate, or to remove him as a named defendant.

III. *Conclusion*

Having reviewed the parties' submissions, and the court file, and the for the reasons set forth above, it is hereby

ORDERED, that the plaintiff's motion for summary judgment with respect to the liability on its substantive due process claim pursuant to Fed.R.Civ.P. 56, is denied; it is further

ORDERED, that the defendants' motion for summary judgment with respect to the plaintiff's substantive due process claim is granted pursuant to Fed.R.Civ.P. 56, and is denied with respect to qualified immunity without prejudice and with leave to resubmit at the end of the plaintiff's case; it is further

ORDERED, that the plaintiff is granted leave to file a Second Amended Complaint within 30 days from the date of this memorandum of decision and order to either delete Patrick Heaney, Sr. as a named defendant or to move against a representative of his estate; and it is further

ORDERED, that the parties are directed to appear on Wednesday, September 10, 1997 at 9:00 a.m. for a status conference.

SO ORDERED.