Gregory RICHARDSON, Plaintiff,

v.

Thomas A. COUGHLIN, III,
et al., Defendants.

No. 93–CV–6254L.

United States District Court,
W.D. New York.

June 19, 2000.

Jeffrey J. Calabrese, Harter, Secrest and Emery LLP, Rochester, NY, Joseph F. Dinolfo, Culley, Marks, Rochester, NY, for Gregory Richardson, plaintiff.

Gregory Richardson, Dannemora, NY, plaintiff pro se.

Anne VanGraafeiland, AUSA, NYS Office of the Attorney General, Rochester, NY, for Thomas A. Coughlin, III, Robert J. McClellan, Colonel George Duncan, Cert Officer 44–00012, cert Officer 44–00013, Cert Officer 44–00021, Cert Officer 44–00026, defendant.

### DECISION AND ORDER

LARIMER, Chief Judge.

## I. INTRODUCTION

Plaintiff, Gregory Richardson ("Richardson"), commenced this civil rights action pursuant to 42 U.S.C. § 1983 against Thomas A. Coughlin, III ("Coughlin"), Commissioner of Correctional Services; Robert J. McClellan ("McClellan"), Superintendent of Southport Correctional Facility; Colonel George Duncan ("Duncan"), Director of the Corrections Emergency Response Team; and four individual officers. All defendants are sued in their individual capacities. Defendants Coughlin, McClellan, and Duncan (collectively "the supervisory defendants") have moved for summary judgment. For the reasons that follow, the supervisory defendants' motion is granted.

## II. DISCUSSION

In May of 1991, plaintiff was an inmate at the Southport Correctional Facility

("Southport") in Chemung County, New York. On May 28, 1991, what the parties characterize as a "disturbance" or "riot" occurred in the facility's recreational yard. The "disturbance" ended the next day, and the Corrections Emergency Response Team ("CERT") was employed to search all the cells for contraband. On May 31, 1991, four CERT officers searched plaintiff's cell.

In his complaint, plaintiff alleges that before the search began, he was forcefully handcuffed, causing injury to his wrists and forearms and that the handcuffs were unnecessarily tightened, causing pain and injury. Plaintiff also alleges that the officers then physically assaulted him, using their fists, boots, and batons. According to plaintiff, three or four other CERT officers arrived and joined in the assault. Plaintiff claims that his personal property was unlawfully destroyed and that following the alleged assault, he was denied medical care.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, the court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *McKelvie v. Cooper*, 190 F.3d 58, 61 (2d Cir.1999).

A deprivation of a constitutional right made under color of state law is actionable pursuant to 42 U.S.C. § 1983. The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments."[1] U.S. Const. amend. VIII. Plaintiff has alleged that the individual supervisory defendants are liable for the alleged conduct of the CERT officers.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)). There are several ways in which a supervisory defendant may be considered personally involved in such a deprivation. First, "[t]he defendant may have directly participated in the infraction." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986). Second, "[a] supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong." *Id.* Third, a supervisory official may have "created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue." *Id.* Fourth a supervisory official who "was grossly negligent in managing subordinates who caused the unlawful condition or event" may be held personally liable. *Id.* at 323–24. Finally, "supervisory liability may be imposed where an official demonstrates 'gross negligence' or 'deliberate indifference' to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place." *Wright*, 21 F.3d at 501 (quoting *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir.1983)).

### A. CERT Director George Duncan

Although plaintiff does not claim that Duncan himself engaged in the improper use of force, he seeks to impose liability because Duncan allegedly knew of improp-

---

**1.** Plaintiff also alleges that his First Amendment rights were violated. However, it does not appear that plaintiff has raised any First Amendment claims against the supervisory defendants.

er conduct by subordinates and condoned it. CERT officers used force at Southport on at least two occasions before plaintiff was allegedly assaulted. Plaintiff argues that Duncan knew of these uses of force, yet did not prevent further assaults upon inmates. Thus, according to plaintiff, Duncan condoned reprisals in the aftermath of the riot.

On May 30, 1991, the day before plaintiff was allegedly assaulted, Southport inmate Christopher Hynes was injured after an altercation with two members of the CERT team. Duncan learned that force had been used against inmate Hynes soon after it occurred, although his deposition testimony does not indicate whether he knew if force was applied appropriately. *See* Affirmation in Opposition,[2] Ex. I. A jury later found that the two officers had "maliciously and sadistically" caused Hynes's injuries. *Hynes v. LaBoy*, 887 F.Supp. 618, 624 (S.D.N.Y.1995).

On that same day, May 30, force was also used against another inmate, Joseph Pope, by CERT Officers Bivins and Minuck. *See* Affirmation in Opposition, Ex. K, Minuck Deposition, p. 104–07. According to Bivins, Minuck filled out a misbehavior report about the incident. *See Id.* at 67. Pope brought a section 1983 claim against the two CERT officers, and a jury trial was held in December of 1996. *See* VanGraafeiland Affidavit, ¶¶ 4–5. The jury returned a verdict in favor of the defendants. *See Id.* at ¶ 6; Ex. 3.

■ Plaintiff does not allege that Duncan improperly trained or managed the officers under his command. Instead, plaintiff suggests that Duncan condoned assaults against prisoners. However, plaintiff has not established that Duncan knew or suspected that the prior two uses of force were improper. Although it is arguably difficult for a supervisory employee to deny knowledge of widespread violent retaliations following a prison riot,

such large-scale violence is not alleged here. *See Al–Jundi v. Mancusi*, 926 F.2d 235, 240 (2d Cir.1991) (The allegation that Corrections Commissioner touring Attica following the 1971 riot must have "either observed brutality or deliberately avoided seeing it" was sufficient to withstand summary judgment.).

Plaintiff has not established defendant Duncan's personal involvement in the alleged constitutional deprivation, therefore, Duncan's motion for summary judgment is granted.

### B. Commissioner of Correctional Services Thomas A. Coughlin

■ Plaintiff alleges that by failing to respond to the two prior uses of force discussed above, "Coughlin created a policy in which reprisals were condoned." Plaintiff's Memorandum of Law, p. 7. Plaintiff suggests that the Court should "assume" that Coughlin was made aware of the CERT officers' activities. *See Id.* He also argues that as a New York Department of Correctional Services Commissioner, it was Coughlin's responsibility to ensure that inmates' rights were protected as order was restored at the facility. As is the case with defendant Duncan, plaintiff has not established Coughlin's personal involvement in the alleged assault. There is no evidence that Coughlin knew that any of the two uses of force were improper before the alleged assault on plaintiff. Therefore, Coughlin could not have "prevented" the harm of which plaintiff complains. Furthermore, the conduct was not so widespread and obvious that Coughlin should be charged, by his failure to act, with condoning it. Therefore, defendant Coughlin's motion for summary judgment is granted.

### C. Southport Superintendent Robert J. McClellan

Plaintiff argues that McClellan failed to protect him from Corrections Officer

---

**2.** The Court relied on attorney Calabrese's Affirmation in Opposition only to the extent that it pointed out evidence submitted in the attached exhibits. Defendants' motion to strike Calabrese's Affirmation (Dkt.# 57) is, therefore, denied.

("CO") Robert Baldwin ("Baldwin"), who, according to plaintiff, somehow encouraged or caused the alleged assault. Plaintiff also alleges that he was denied medical care following the alleged assault and that McClellan is liable for this alleged lack of treatment.

### 1. McClellan's Liability for the Alleged Assault

Plaintiff was involved in an altercation with Baldwin at Southport on June 26, 1990. *See* Affirmation in Opposition, Ex. B, Baldwin Deposition, p. 15–16. According to plaintiff, he was transferred out of Southport that night. Baldwin filed an inmate misbehavior report following this incident. *See* Affirmation in Opposition, Ex. C. Thus, plaintiff claims that McClellan was aware of this altercation. In February of 1991, plaintiff was transferred back to Southport. Plaintiff alleges that upon his return, two officers threatened him and told him that CO Baldwin would be glad to see him. *See* Affirmation in Opposition, Ex. A, Richardson Deposition, p. 53. Later, Baldwin and another officer allegedly indicated that Richardson should have never been sent back to Southport. *See Id.* On February 9, 1991, Richardson sent a letter to Iman Alaji ("Alaji"), the Southport Muslim Coordinator. In his letter, plaintiff indicated that two officers threatened him, and that one officer, identified as CO Shaylor, told him that several CO's, including CO Baldwin, could not "wait to get their hands on" him. Affirmation in Opposition, Ex. E, p. 3. There was no mention of any first-hand, personal threat by Baldwin. Richardson also made several requests in his letter, including a request that Alaji come to see him, put him on the "Ramadan list," and provide him with a prayer schedule. McClellan apparently also received plaintiff's letter, and assigned Southport Deputy Superintendent for Security Services W.L. Cuer ("Cuer") to investigate plaintiff's complaint. *See Id.* at 1. Cuer dismissed plaintiff's complaint as an attempt to receive quicker attention from Alaji. *See Id.* at 4.

On the day of the alleged assault, Baldwin was temporarily assigned to plaintiff's cell block. Prior to the search of plaintiff's cell, Baldwin, responding to a query from a CERT sergeant, told the sergeant that plaintiff and three or four other inmates were "trouble" inmates. Affirmation in Opposition, Ex. B, Baldwin Deposition, p. 26. Plaintiff alleges that following the assault, Baldwin came to plaintiff's cell with two CERT officers and told plaintiff that "next time you know we are going to kill you." *Id.* at 48–49. Plaintiff also asserts that on June 18, 1991, Baldwin suggested that he played a role in the assault, as a reprisal for the June 1990 incident.

Assuming that Baldwin did somehow encourage or cause the alleged assault, the question becomes whether McClellan can be held liable for Baldwin's conduct. Plaintiff does not claim that McClellan directly participated in the alleged assault, nor does he claim that McClellan failed to remedy a constitutional wrong. Instead, plaintiff argues that McClellan was "responsible for the proper functioning of the entire facility" and "should have taken steps to insure that Baldwin was not positioned in close proximity to plaintiff, particularly in the aftermath of a riot when tensions were high." Plaintiff's Memorandum of Law, p. 4. This is not enough to impose liability on McClellan.

Richardson relies on his complaint to Alaji, forwarded to McClellan, as evidence of McClellan's knowledge of the danger Baldwin posed to plaintiff. However, nowhere in this letter did Richardson indicate that Baldwin threatened him directly. Viewing the facts in the light most favorable to plaintiff, Richardson has not established McClellan's personal involvement in the alleged constitutional deprivation.

### 2. The Alleged Denial of Medical Care

The denial of medical care may rise to the level of an Eighth Amendment

violation. *See Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). To establish such a violation, "a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Id.* (quoting *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The deliberate indifference standard includes both objective and subjective elements: 1) "the alleged deprivation must be, in objective terms, sufficiently serious"; and 2) "the defendant must act with a sufficiently culpable state of mind." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (internal quotation marks omitted) (quoting *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994)).

Plaintiff alleges in his complaint that he was not provided with medical care in a timely manner following the alleged assault. *See* Complaint, ¶ 42. Plaintiff claims that he suffered a dental injury during the assault, and that despite his complaints, he did not see a dentist until 18 days later. *See* Richardson Affirmation, ¶¶ 4–7, 22. When Richardson did see the dentist, he had an oral infection. *See* Affirmation in Opposition, Ex. M, Lax Deposition, p. 21.

Plaintiff alleges that "[t]he Superintendent knew or should have known of plaintiff's condition, and exhibiting deliberate indifference, he failed to obtain immediate medical attention for plaintiff." Complaint, ¶ 41. On June 4, 1991, four days after the alleged assault, plaintiff forwarded a request to Dr. Theodore Lax requesting emergency dental treatment. Security was unable to bring plaintiff to the dentist until June 18. *See* Affirmation in Opposition, Ex. M; Lax Deposition, ¶ 19.

In addition, soon after the alleged assault, Richardson filed an Inmate Grievance Complaint, which indicated his urgent need to see a dentist. *See* Richardson Affirmation, Ex. B. Richardson alleges that he prepared the complaint on June 4, 1991. *See* Richardson Affirmation, ¶ 11.

According to plaintiff, Alaji attempted to deliver the grievance, and reported to plaintiff on June 7, 1991, that McClellan would not accept it. *See Id.* at 12–13. Plaintiff maintains that Alaji mailed the complaint to McClellan on June 7, 1991. The complaint itself, attached to Richardson's Affirmation as Exhibit C, is stamped as received on June 17, 1991. McClellan averred that inmate grievances are generally handled by the Inmate Grievance Office. *See* Coughlin Affidavit, ¶ 13. It is that office's date stamp that appears on Exhibit C to Richardson's Affirmation. McClellan's response, which is undated, indicates that the complaint was investigated and that plaintiff was seen by both the dentist and the doctor.[3] The record indicates, and plaintiff does not dispute, that plaintiff was seen by medical staff on June 3, 4, and 17. *See* McClellan Affirmation, Ex. A; Richardson Affirmation, ¶¶ 7, 21.

■ Assuming, *arguendo,* that plaintiff's medical condition was sufficiently serious, plaintiff has not established that McClellan was even aware of his alleged injuries, let alone that McClellan was deliberately indifferent to plaintiff's serious medical needs. Moreover, the record suggests that McClellan did not receive plaintiff's complaint until July 17, 1991. Plaintiff saw the dentist the next day. *See* Affirmation in Opposition, Ex. N. Any alleged delay in medical treatment following the receipt of plaintiff's grievance was *de minimus.*

■ Even assuming that McClellan received plaintiff's letter, yet took no action, plaintiff has still not established McClellan's personal involvement in the alleged constitutional deprivation. "Generally, the allegation that a supervisory official ignored a prisoner's letter protesting unconstitutional conduct is not itself sufficient to allege the personal involvement of the offi-

---

3. The response indicates that Richardson saw a doctor on June 24, 1991. It is, therefore, reasonable to assume that the response was written after June 24. *See* Richardson Affirmation, Ex. D.

cial so as to create liability under § 1983." *Pritchett v. Artuz*, 2000 WL 4157, at *6 (S.D.N.Y. Jan.3, 2000) (quoting *Gayle v. Lucas*, 1998 WL 148416, at *4 (S.D.N.Y. Mar.30, 1998)); *see Thomas v. Coombe*, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998) (Even assuming that plaintiff wrote letters complaining of a denial of medical care to supervisory defendants, "the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement."); *Woods v. Goord*, 1998 WL 740782 (S.D.N.Y. Oct.23, 1998) (Receiving letters or complaints does not automatically make a supervisor liable for the denial of medical care.).

For the reasons discussed above, defendant McClellan's motion for summary judgment is granted.

### D. Plaintiff's Destruction of Property Claim

Plaintiff alleges that CERT personnel destroyed personal property found in his cell, including family photographs, books and magazines, personal correspondence, and legal materials. *See* Complaint, ¶ 4. Thus, plaintiff alleges that he was deprived of property without due process of law.

 The deprivation of property by a state employee will not be found to violate the Due Process Clause where an adequate state post-deprivation remedy is available. *See Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). However, "an adequate post-deprivation remedy is a defense to a Section 1983 due process claim only where the deprivation is random and unauthorized." *Alexandre v. Cortes*, 140 F.3d 406, 411 (2d Cir.1998) (quoting *Butler v. Castro*, 896 F.2d 698, 700 (2d Cir.1990)). Therefore, where the deprivation is the result of established state procedures, "the existence of independent state relief does not defeat a Section 1983 claim." *Id.; see Sullivan v. Town of Salem*, 805 F.2d 81, 86 (2d Cir. 1986) (If local official's conduct "either established or was pursuant to town policy"

the existence of an adequate post-deprivation remedy does not foreclose section 1983 relief.).

Plaintiff argues that "[g]iven the apparent widespread destruction of property, ... there is a genuine issue of fact as to whether the intentional destruction of plaintiff's property was actually *part of the established state procedure* employed by DOCS." Plaintiff's Memorandum of Law, p. 17–18 (emphasis in original). In support of this claim, plaintiff offers only Duncan's deposition testimony that he was aware that there were several claims from inmates that officers had destroyed personal property. *See* Affirmation in Opposition, Ex. F, Duncan Deposition, p. 43. Duncan also agreed that he had determined that some of the inmates' personal property had been destroyed by CERT officers, although he was not sure which team of CERT officers were involved. *See Id.*

 Duncan's testimony by no means establishes a systematic destruction of property that could be construed as DOCS procedure during a post-disturbance search for contraband. Plaintiff's attempts to show an established state procedure are grounded only in conclusory statements supported by scant evidence. As such, plaintiff's property claim cannot withstand a motion for summary judgment. *See Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996); *Brown v. Williams*, 1998 WL 841638, at *2 (E.D.N.Y. Dec.2, 1998) (Summary judgment should be granted where the nonmoving party's "evidence is merely colorable, conclusory, speculative, or not significantly probative.").

### III. CONCLUSION

For the foregoing reasons, the supervisory defendants' motion for summary judgment (Dkt.# 40) is hereby granted. Defendants' motion to strike attorney Ca-

labrese's *Affirmation* (Dkt.# 57) is hereby denied.

IT IS SO ORDERED.